IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| v. | * | Criminal Case No. RDB-23-0126 |
| AL TARIQ SMITH | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

### MOTION TO SUPPRESS PHYSICAL EVIDENCE

Al Tariq Smith moves pursuant to Rule 12(b)(3) of the Federal Rules of Criminal Procedure to suppress any physical evidence, direct and derivative, that was obtained in connection with his warrantless arrest on January 17, 2023.

### Factual Background

On January 17, 2023, at approximately 9:30 a.m., law enforcement received a call for service for a welfare check for a man sleeping in a car parked at a gas pump near 1101 W. North Avenue. Upon their arrival, officers observed a male occupant – then unknown to them – sleeping in the driver seat of the car. One officer approached the driver side and attempted to make contact with the male by knocking on the window. According to the officer, the male would wake up and then fall back asleep. Another officer approached the passenger seat and allegedly viewed a gun in plain sight. Officers ordered the male out of the car, and he complied by unlocking the car doors. One officer opened the driver side door, immediately placed hands on Mr. Smith, unbuckled his seat belt, pulled him out of the car, ordered he place his hands behind his back, and shackled him in handcuffs. Another officer opened the passenger door, seized a gun, and rendered it safe. It was not until after Mr. Smith was

1

arrested that officers learned his identity and that he was prohibited from possessing a firearm due to prior convictions.[1]

## Legal Argument

The Court should suppress all direct and derivative evidence because Mr. Smith's Fourth Amendment rights were violated. The government cannot carry its burden of justifying the officers' warrantless conduct. *See United States v. Jeffers*, 342 U.S. 48, 51 (1951) (government's burden to justify a warrantless search); *United States v. Gwinn*, 219 F.3d 326, 335 (4th Cir. 2000) (same); *e.g.*, *United States v. Caseres*, 533 F.3d 1064, 1076 (9th Cir. 2008) (reversing district court's denial of motion to suppress because government did not carry its burden of justifying warrantless search). Accordingly, all evidence (*e.g.*, the firearm, ammunition, any statements) should be suppressed either as direct constitutional violations or fruits of the violations.

I.  **There Was No Probable Cause For An Arrest Or Reasonable Suspicion For A Stop.**

"The Supreme Court has recognized three distinct types of police-citizen interactions: (1) arrest, which must be supported by probable cause, *see Brown v. Illinois,* 422 U.S. 590 (1975); (2) brief investigatory stops, which must be supported by reasonable articulable suspicion, *see Terry v. Ohio,* 392 U.S. 1 (1968); and (3) brief encounters between police and citizens, which require no objective justification, *see Florida v. Bostick*, 501 U.S. 429 (1991)." *United States v. Weaver*, 282 F.3d 302, 309 (4th Cir. 2002). The Fourth Circuit has explained that "[a] *Terry* or investigative stop can cross the line and turn into an arrest . . . [if], under the totality of the circumstances, the suspect's freedom of action is curtailed to a degree associated with a

---

[1] This background is gleaned from the statement of probable cause and body-worn camera video provided in discovery.

formal arrest." *Young v. Prince George's County, Maryland*, 355 F.3d 751, 755 (4th Cir. 2004) (quoting *Park v. Shiflett*, 250 F.3d 843, 850 (4th Cir. 2001); *Berkemer v. McCarty*, 468 U.S. 420, 440 (1984)). Factors such as the duration of the encounter, whether a suspect was moved, and intrusiveness may indicate that a stop has become an arrest. *See, e.g.*, *United States v. Sharpe*, 470 U.S. 675, 686 (1985); *Florida v. Royer*, 460 U.S. 491, 500 (1983); *Dunaway v. New York*, 442 U.S. 200, 212 (1979).

Here, Mr. Smith was under arrest immediately when officers ambushed and awoke him, placed hands on him, pulled him out of the car, and placed him in handcuffs. Body-worn camera footage shows that Mr. Smith's car was surrounded by Baltimore City Police Department (BPD) officers and their patrol cars, strategically placed so that he could not get away. They demanded that he wake up and get out of the car. At least one officer had his service weapon pulled out of his holster and at his side. As he was awoken, an officer immediately put his hands on Mr. Smith, unbuckled his seat belt, ensured he could not move, pulled him out of the car, ordered him to put his hands behind his back, and placed him in handcuffs.

This collective police action certainly curtailed Mr. Smith's freedom to a degree associated with formal arrest. *See, e.g.*, *Park*, 250 F.3d at 848, 852 (individual arrested where officers grabbed him, placed him in handcuffs, threw him against the building, and locked him in patrol car because his "freedom was curtailed to a degree associated with formal arrest"); *Cortez v. McCauley*, 478 F.3d 1108, 1115-16 (10th Cir. 2007) (use of firearms, handcuffs, and other "forceful techniques" generally constitute an arrest); *Freeman v. Gore*, 483 F.3d 404, 413 (5th Cir. 2007) (individual under "arrest" where she was threatened with arrest, told to place her hands behind her back, and was handcuffed and placed in the back of the police car).

In the circumstance of a warrantless arrest, as occurred here, law enforcement must have probable cause to believe a felony is being or has been committed by the arrested person. *Maryland v. Pringle*, 540 U.S. 366, 370 (2003); *United States v. Watson*, 423 U.S. 411, 424 (1976) (warrantless arrest permitted if officer has probable cause to believe felony has been committed, even if committed outside officer's presence); *United States v. Manbeck*, 744 F.2d 360, 376 (4th Cir. 1984) (probable cause requires "facts and circumstances within the officer's knowledge [which] would warrant the belief of a prudent person that the arrestee had committed or was committing an offense"). Probable cause "is a fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules." *Illinois v. Gates*, 462 U.S. 213, 232 (1983); *see also Pringle*, 540 U.S. at 370 (describing probable cause as "a practical, nontechnical conception that deals with the factual and practical considerations of everyday life"). It is a question that depends on the totality of the circumstances. *Id.* at 370-71; *United States v. Humphries*, 372 F.3d 653, 657 (4th Cir. 2004). And although probable cause requires less than the standard of evidence needed to convict, it requires more than "bare suspicion." *United States v. Gray*, 137 F.3d 765, 769 (4th Cir. 1998).

At the time he was arrested, there was no probable cause to support Mr. Smith's arrest. In other words, there were no facts to believe that a felony was being committed or had been committed by Mr. Smith. Officers did not know at the time that Mr. Smith was prohibited from possessing a firearm. The Fourth Circuit instructed in *United States v. Black*, 707 F.3d 531, 540 (4th Cir. 2013): "Being a felon in possession of a firearm is not the default status. More importantly, where a state permits individuals to openly carry firearms, the exercise of this right, without more, cannot justify an investigatory detention." In *Black*, the Fourth Circuit held that a

4

defendant's lawful display of his lawfully possessed firearm could not be the justification for the officer's detention of him.  In Maryland, of course, one is permitted to "wear[], carry[], or transport[] a handgun," if he or she has a permit to do so.  Md. Code Ann., Crim. Law § 4-203(b)(2).  All officers knew at the time of Mr. Smith's arrest was that a Black man appeared to be sleeping in a car around 9:30 a.m. and an officer claimed to have seen a firearm.

At the time of Mr. Smith's arrest, the officers did not know that he did not have a valid permit or was prohibited from possessing the gun due to prior convictions and, therefore, there was no probable cause to believe he had committed or was committing a felony.  *Cf., e.g.*, *Northrup v. City of Toledo Police Dep't*, 785 F.3d 1128, 1131 (6th Cir. 2015) (where pedestrian was visibly carrying a firearm on his hip, no reasonable suspicion that the pedestrian was engaged in criminal activity because "Ohio law permits the open carry of firearms . . . and thus permitted [the pedestrian] to do exactly what he was doing"); *United States v. Lewis*, 672 F.3d 232, 240 (3d Cir. 2012) (Where "[i]t is lawful for certain individuals in the Virgin Islands to carry a firearm provided that a license is obtained," and "[a]bsent any information about the criminality of the firearms, the mere possession of the firearms could not provide [the officer] with reasonable suspicion to stop the vehicle."); *United States v. Booker*, 533 F. Supp. 3d 321, 329 (W.D. Va. 2021) ("I find that the officers did not have reasonable suspicion to detain Mr. Booker.  It is clear from the bodycam video that the reason they stopped the men was because they saw Mr. Booker briefly holding the firearm and placing it in the trunk of the car.  Had Mr. Booker not been a convicted felon — a status the officers did not know at the time — his possession of this firearm would have been entirely legal."); *Pulley v. Commonwealth*, 481 S.W.3d 520, 526–27 (Ky. Ct. App. 2016) ("In states in which possession of an unconcealed firearm is legal, the mere

observation or report of an unconcealed firearm cannot, without more, generate reasonable suspicion for a *Terry* stop and the temporary seizure of that firearm."); *United States v. Kingsborough*, 744 F. App'x 139, 151-52 (4th Cir. 2018) (Thacker, concurring in part).

The appropriate remedy is suppression of all the evidence, both direct and derivative. *United States v. Oscar-Torres*, 507 F.3d 224, 227 (4th Cir. 2007) ("Indisputably, suppression of evidence obtained during illegal police conduct provides the usual remedy for Fourth Amendment violations."); *see also Weeks v. United States*, 232 U.S. 383 (1914) (establishing the exclusionary rule that bars the use of illegally obtained evidence at trial); *Wong Sun v. United States*, 371 U.S. 471 (1963) (establishing the rule that evidence that is derivative of illegal police conduct is suppressed as "fruit of the poisonous tree").

Even if the Court were to determine that Mr. Smith was merely "stopped" rather than arrested, these facts – even if true – would not constitute reasonable suspicion to justify an investigatory detention for the same reasons. The Fourth Circuit has already held that "where a state permits individuals to openly carry firearms, the exercise of this right, without more, cannot justify an investigatory detention." *Black*, 707 F.3d at 540.

II.     **There Was Not A Sufficient Basis To Search The Car.**

A search occurs for Fourth Amendment purposes "when an expectation of privacy that society is prepared to consider reasonable is infringed." *United States v. Jacobsen*, 466 U.S. 109, 113 (1984). The Supreme Court's analysis in *New York v. Class*, 475 U.S. 106 (1986), is instructive. There, police officers stopped a car for speeding. *Id.* at 107-08. During the stop, an officer opened the car door to read the vehicle identification number printed on the doorjamb. *Id.* at 108. When he did not find the VIN there, he searched the dashboard. *Id.* Because the VIN

on the dashboard was covered by papers, the officer opened the door and reached inside to move them out of the way; while doing so, he saw a gun hidden under the seat. *Id.*

The Supreme Court held that the officer's conduct did not violate the Fourth Amendment. The Court explained that "a car's interior as a whole is . . . subject to Fourth Amendment protection from unreasonable intrusions by the police." *Class*, 475 U.S. at 114–15.  And it had no difficulty in concluding that "the intrusion into that space" by the officer "constituted a 'search.'" *Id.* at 115. Nevertheless, it held that the search was valid because "the governmental interest in highway safety served by obtaining the VIN is of the first order," and the VIN's location on the dashboard is "ordinarily in plain view of someone outside the automobile," so the intrusion involved in searching it is "minimal." *Id.* at 117–18.  The Court made clear that the result would have been different had the VIN not been covered by papers: "If the VIN is in the plain view of someone outside the vehicle, there is no justification for governmental intrusion into the passenger compartment to see it." *Id.* at 119.

Significantly, *Class* establishes that a physical intrusion into the interior of a car constitutes a search.  Here, law enforcement pulled on the handles of the car doors and opened the car doors, reaching into the car.  That constitutes a search.

Although the search in *Class* was justified because of the specific need – finding the VIN – and its minimal intrusiveness, neither of those considerations is present here.  Warrantless searches are per se unreasonable under the Fourth Amendment. *California v. Acevedo*, 500 U.S. 565, 580 (1991).  They are reasonable only if they fall within a recognized exception to the warrant clause. *Id.*; *see also Missouri v. McNeely*, 569 U.S. 141, 148 (2013).  The automobile exception is one such exception.  Under that exception, a warrantless search of a car is permissible

only where there is probable cause to believe the car contains contraband or evidence of a crime. *See United States v. Ross*, 456 U.S. 798, 800 (1982).[2]

Here, as discussed above, there was no probable cause to believe the car contained contraband or evidence of a crime at the time the search – the opening of the doors – was initiated. *United States v. Patiutka*, 804 F.3d 684, 688 (4th Cir. 2015) ("[P]olice must have probable cause to arrest prior to beginning a search.  This requirement ensures that the fruits of a warrantless search will not serve as justification for the arrest." (citing *United States v. Han*, 74 F.3d 537, 541 (4th Cir.1996); *Sibron v. New York*, 392 U.S. 40, 62-63 (1968)).

The Fourth Circuit's unpublished decision in *United States v. Graham*, 686 F. A'ppx 166 (4th Cir. 2017), is instructive.  In *Graham*, the Fourth Circuit found that the automobile exception to the warrant requirement did not save a warrantless search of a car.  There, officers responding to a hang up 911 call handcuffed the defendant after learning that he had an outstanding warrant with an attachment that said to "use caution, consider armed and dangerous." *Id.* at 168.  Officers patted down the defendant for "officer safety" and, without administering *Miranda*, asked the defendant whether he had "any weapons on him or anything that may hurt me or him." *Id.*  The defendant responded that there was a gun under the driver's seat of his car. *Id.*  Officers then retrieved a loaded gun from the car. *Id.*

The Fourth Circuit held that the automobile exception to the warrant requirement did not justify the warrantless search of the car.  The court held that there was no probable cause to

---

[2] The automobile exception was originally created due to the inherent mobility of automobiles and the concern that contraband or evidence of a crime may disappear if police took the time to obtain a warrant.  *See Carroll v. United States*, 267 U.S. 132, 153 (1925); *Chambers v. Maroney*, 399 U.S. 42, 52 (1970); *California v. Carney*, 471 U.S. 386, 390-91 (1985).  With the change in

believe the defendant's car contained contraband or evidence of a crime because law enforcement learned the defendant could not legally possess a gun due to a felony conviction *after* seizing the gun from a car: "We therefore hold that at the time of the warrantless search and seizure, an objectively reasonable officer would not believe that he had probable cause to search the truck for contraband, because at that point, there was no evidence that Graham's possession of a firearm was illegal. *Id.* at 174. In short, as here, the mere presence of a firearm alone does not mean there is probable cause to believe a crime has been committed and a search of the car is allowed.

Accordingly, the appropriate remedy is suppression of all evidence, both direct and derivative. *Oscar-Torres*, 507 F.3d at 227; *see also Weeks*, 232 U.S. 383; *Wong Sun*, 371 U.S. 471.

III.     **Conclusion**

Mr. Smith moves for suppression of all direct and derivative evidence for these reasons and any others that become apparent at a hearing on the motion.

    Respectfully submitted,

    JAMES WYDA
    Federal Public Defender

    /s/
    Maggie Grace (#29905)
    Assistant Federal Public Defender
    Office of the Federal Public Defender
    100 South Charles Street
    Tower II, 9th Floor
    Baltimore, Maryland 21201
    Phone: 410-962-3962
    Fax: 410-962-0872
    Email: maggie_grace@fd.org

---

technology over the past 100 years and the ease and efficiency by which law enforcement can obtain warrants, there is no longer a need for this outdated exception to the warrant requirement.

## REQUEST FOR HEARING

Pursuant to Rule 105.6 of the Local Rules of the United States District Court for the District of Maryland, Mr. Smith requests a hearing on this motion.

/s/
Maggie Grace (#29905)
Assistant Federal Public Defender