IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>AL TARIQ SMITH<br><br>Defendant | CRIMINAL NO. RDB-23-0126 |

**GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS
THE INDICTMENT ON SECOND AMENDMANT GROUNDS**

Erek L. Barron
United States Attorney

James I. Hammond
Special Assistant United States Attorney

Michael C. Hanlon
Assistant United States Attorney

36 South Charles Street
Fourth Floor
Baltimore, Maryland 21201
410-209-4800

1

**TABLE OF CONTENTS**

I. INTRODUCTION………...………………………………………………….……………3

II. BACKGROUND………...………………………………………………….…………….4

III. ARGUMENT …………………………………………………………..…………….5

    A. *Bruen* Did Not Abrogate Fourth Circuit Precedent Upholding 18 U.S.C. § 922(g)(1) and Prior Supreme Court Statements in *Heller* and *McDonald*………..5

    B. Even If Fourth Circuit Precedent Did Not Control in the Wake of *Bruen*, the Defendant's Indictment is Still Constitutionally Valid…………………………..10

        1. The plain text and historical context of the Second Amendment indicate that felons as a category, and the Defendant specifically, can be disarmed……………………………………………………………………10

        2. Section 922(g)(1) is consistent with the country's historical tradition of firearm regulation…………………………………………………………...14

        3. Section 922(g)(1) is constitutional as applied to the Defendant based on his prior convictions for felonies……………………………………...17

IV. CONCLUSION……………………………………………………………………. 19

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| UNITED STATES OF AMERICA <br><br> v. <br><br> AL TARIQ SMITH <br><br> **Defendant** | CRIMINAL NO. RDB-23-0126 |

**GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS
THE INDICTMENT ON SECOND AMENDMANT GROUNDS**

The United States of America, by and through its attorneys Erek L. Barron, United States Attorney for the District of Maryland, and James I. Hammond, Special Assistant United States Attorney for said District, submits this response to Defendant's Motion to Dismiss the Indictment on Second Amendment Grounds, requesting that the motion be denied.

## I. INTRODUCTION

The Defendant, Al Tariq Smith, is charged with violating 18 U.S.C. § 922(g)(1). The charge stems from a January 17, 2023, arrest in which the Defendant was found asleep in the driver's seat of a vehicle at a gas pump with a privately made firearm, loaded with fifteen rounds of ammunition, in plain view next to him on the center console. The Defendant now moves to dismiss the charge on Second Amendment grounds.

Contrary to the defense position, recent developments in Second Amendment jurisprudence have not changed the legal landscape relevant to this case. This Court should reject the Defendant's motion and re-affirm the legal validity of 18 U.S.C. § 922(g)(1).

As an initial matter, the motion must be denied because this Court is bound by Fourth Circuit precedent upholding the constitutionality of 18 U.S.C. 922(g)(1) that was not upended by

3

the recent Supreme Court decision in *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 142 S. Ct. 2111 (2022). *See United States v. Moore*, 666 F.3d 313, 318 (4th Cir. 2012).

Next, the Second Amendment's protections do not extend to the Defendant or to the conduct at issue in this case. The Supreme Court has made clear that "the people" to whom the Amendment applies only includes "law-abiding, responsible citizens" who are using firearms for "lawful purposes." *Bruen*, 142 S. Ct. at 2138 n.9. Its protections do not extend to convicted felons, especially those that have previously committed violent offenses, like the Defendant here.

Finally, even if § 922(g)(1) does regulate conduct that is protected by the Second Amendment, it would still be constitutional because it is a law that is consistent with the nation's historical tradition of firearm regulation. The Supreme Court consistently described "prohibitions on the possession of firearms by felons" as both "longstanding" and "presumptively lawful." *District of Columbia v. Heller*, 554 U.S. 570, 626-27 & n.26 (2008). Accordingly, under *Bruen*, § 922(g)(1) is constitutional. Indeed, the overwhelming majority of courts to address the issue have rejected challenges to the constitutionality of § 922(g)(1).

The Defendant offers no sound reason for this Court to depart from the avalanche of decisions rejecting the very claim brought by the Defendant here. The Defendant's motion should be denied.

## II. BACKGROUND[1]

On April 6, 2023, a federal grand jury in the District of Maryland returned an indictment charging the Defendant with possession of ammunition by a prohibited person in violation 18 U.S.C. § 922(g)(1). ECF No. 1. The Defendant had previously been convicted of multiple crimes

---

[1] For a more fulsome discussion of the background of this case, see the Statement of Facts section of the Government's Response to the Defendant's Motion to Suppress Physical Evidence.

4

"punishable by imprisonment for a term exceeding one year." 18 U.S.C. § 922(g)(1).[2] On September 14, 2023, the Defendant filed a Motion to Dismiss the Indictment on Second Amendment Grounds. ECF No. 36.

As detailed below, the Defendant's motion is legally meritless and should be denied.

### III. ARGUMENT

#### A. *Bruen* Did Not Abrogate Fourth Circuit Precedent Upholding 18 U.S.C. § 922(g)(1) and Prior Supreme Court Statements in *Heller* and *McDonald*

The Second Amendment provides that: "[a] well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II.

In 2008, the Supreme Court concluded that the Second Amendment confers an "individual right to keep and bear arms in case of confrontation." *District of Columbia v. Heller*, 554 U.S. 570, 592 (2008). The "central" aspect of this right is the "right to self-defense." *Id*. at 628. The Court noted, however, that as with other fundamental rights, "the right secured by the Second Amendment is not unlimited." *Id*. at 626. The Court further explained that "nothing in our opinion should be taken to cast doubt on *longstanding prohibitions on the possession of firearms by felons* and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale

---

[2] According to the Pretrial Services Report prepared in this case prior to the Defendant's detention hearing, the Defendant was convicted of the following pertinent crimes: 1) Assault Second Degree in 2007; 2) Assault Second Degree in 2009; 3) Unlawful Possession of a Controlled Substance in 2010; 4) Unlawful Possession of a Controlled Substance in 2011; 5) Burglary Fourth Degree in 2012; 6) Unlawful Possession of a Controlled Substance in 2015; and 7) Possession with Intent to Distribute a Controlled Substance in 2018. Absent from the Pretrial Services Report is an additional conviction for Possession with Intent to Distribute a Controlled Substance in 2017. Not listed are additional convictions of the Defendant that were not punishable by more than one year imprisonment at the time of conviction.

of arms." *Id*. (emphasis added). In fact, the Court described such restrictions as "presumptively lawful regulatory measures." *Id*. at 627 n.26.

Two years later in *McDonald v. Chicago*, 561 U.S. 742 (2010), the Supreme Court held that the Second Amendment applies to both the federal and state governments. *Id*. at 750. The plaintiffs there challenged a city ordinance that effectively banned handgun possession by private citizens living in Chicago. *Id*. In deeming the law unconstitutional, the Court "repeated [its prior] assurances" about what the Court was not doing: "[w]e made it clear in *Heller* that our holding did not cast doubt on such longstanding regulatory measures as 'prohibitions on the possession of firearms by felons and the mentally ill.'" *Id*. at 786 (quoting *Heller*, 554 U.S. at 626-27).

Following *Heller* and *McDonald*, the Fourth Circuit formulated a "two-part approach to Second Amendment claims." *United States v. Chester*, 628 F.3d 673, 680 (4th Cir. 2010). The first step required an "historical inquiry"—exploring "whether the conduct at issue was understood to be within the scope of the right at the time of ratification." *Id*. "If the challenged regulation burden[ed] conduct that was within the scope of the Second Amendment as historically understood," the Court "move[d] to the second step of applying an appropriate form of means-end scrutiny." *Id*.

In *United States v. Moore*, the Fourth Circuit relied on *Heller*'s principle that felon-in-possession laws are "presumptively lawful" to uphold § 922(g)(1) under a "more streamlined" *Chester* analysis. 666 F.3d 313, 318 (4th Cir. 2012). The court held that the principle in *Heller* "negates a facial challenge to a felon in possession statute like § 922(g)(1)." *Id*. Moreover, the court found that the defendant was not "within the category of citizens" that *Heller* said possessed a right to bear arms: "'law-abiding responsible citizens.'" *Id*. at 319 (quoting *Heller*, 554 U.S. at

635, and adding emphasis).³ The Fourth Circuit later held that "conviction of a felony necessarily removes one from the class of 'law-abiding, responsible citizens' for the purposes of the Second Amendment." *Hamilton v. Pallozzi*, 848 F.3d 614, 626 (4th Cir. 2017).

In *Bruen*, the Supreme Court elaborated on the framework of Second Amendment analysis. The Court struck down a New York firearm licensing scheme wherein applicants were required to prove that they had "proper cause" to carry a handgun in public for self-defense. *Bruen*, 142 S. Ct. at 2123. The Court held that the "proper cause" requirement was too subjective and violative of the Second Amendment. *Id*. at 2156. *Bruen* rejected the second step of the test adopted by courts post-*Heller*–the "means-end scrutiny" analysis. *Bruen*, 142 S. Ct. at 2125-26. However, the Court noted that "[s]tep one of the predominant framework is broadly consistent with *Heller*, which demands a test rooted in the Second Amendment's text, as informed by history." *Id*. at 2127. The Court explained the proper standard in the Second Amendment context: First, "when the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct." Second, to justify regulation burdening that conduct, the government "must demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation." *Id*. at 2126.

*Bruen* did nothing to abrogate the Court's holdings in *Heller* and *McDonald*. Indeed, *Bruen* characterized its holding as consistent with those decisions. *Bruen*, 142 S. Ct. at 2122 ("We … hold, consistent with *Heller* and *McDonald*, that the Second and Fourteenth

---

³       Since *Moore*, the Fourth Circuit consistently denied as-applied Second Amendment challenges to § 922(g)(1). *See United States v. Smoot*, 690 F.3d 215, 221-22 (4th Cir. 2012); *Pruess*, 703 F.3d at 245-47; *United States v. Lunsford*, 470 F. App'x 184, 185 (4th Cir. 2012) (per curiam) (unpublished); *United States v. Kline*, 494 F. App'x 323, 324-26 (4th Cir. 2012) (per curiam) (unpublished); *United States v. Morrison*, 504 F. App'x 247, 250 (4th Cir. 2013) (per curiam) (unpublished); *Taylor*, 594 F. App'x at 790; *United States v. Thorpe*, 680 Fed. App'x 209, 211 (4th Cir. 2017) (per curiam) (unpublished).

Amendments protect an individual's right to carry a handgun for self-defense outside the home."). Moreover, Fourth Circuit precedent upholding § 922(g)(1) accords with the approach set out in *Bruen*, since those Fourth Circuit cases did not engage in means-end scrutiny that *Bruen* rejected. Instead, they relied on *Heller* for the proposition that "longstanding" felon disarmament laws are "presumptively lawful," 554 U.S. at 626-27 & n.26, and that the Second Amendment protects the rights of "law-abiding, responsible citizens[.]" *Id*. at 635. *See Hamilton*, 848 F.3d at 625-28; *Moore*, 666 F.3d at 318-20. *Bruen* did nothing to upset those principles. Justice Alito explained in concurrence that *Bruen* does not "disturb[ ] anything that [the Court] said in *Heller* or *McDonald* . . . about restrictions that may be imposed on the possession or carrying of guns." *Bruen*, 142 S. Ct. at 2157 (Alito. J., concurring). And Justice Kavanaugh (joined by Chief Justice Roberts) emphasized that "the Second Amendment allows a 'variety' of gun regulations" and reiterated *Heller*'s statement about not "cast[ing] doubt on longstanding prohibitions on the possession of firearms by felons." *Id*. at 2162 (Kavanaugh, J., concurring) (quotations omitted).

The Defendant incorrectly contends that *Heller*'s statements regarding the "presumptively lawful" felon disarmament laws no longer "warrant[] deference" in the wake of *Bruen*. The Defendant notes, that despite *Heller*'s observation that most 19th-century courts upheld "prohibitions on carrying concealed weapons," 554 U.S. at 626, *Bruen* nevertheless conducted a full historical analysis when considering New York's license-to-carry scheme. *See Bruen*, 142 S. Ct. at 2135-56. Unlike the historical concealed-carry laws mentioned by *Heller*, however, the New York licensing scheme banned "public carry altogether." *Id.* at 2146. And, unlike laws dispossessing felons, the New York scheme burdened the firearm-carry rights of "ordinary, law-abiding, adult citizens." *Id*. at 2134. Thus, *Bruen*'s exhaustive historical analysis does not suggest that such an inquiry is necessary to uphold § 922(g)(1).

In short, *Bruen* did not uproot prior Supreme Court statements in *Heller* and *McDonald* and Fourth Circuit precedent on the viability of § 922(g)(1). It simply abrogated the means-end scrutiny step in the Fourth Circuit's framework for Second Amendment analysis. Accordingly, Fourth Circuit precedent remains good law and controls on this issue—§ 922(g)(1) is constitutionally valid, both facially and as-applied, and the Defendant's indictment is not subject to dismissal.[4]

---

[4] The Fourth Circuit has yet to rule on the constitutionality of § 922(g)(1) post *Bruen*, but it heard argument in *United States v. Zavien Canada*, Case No. 22-4519, on December 5, 2023. Of the five federal circuit courts to address the issue, four have rejected facial or as-applied challenges to the constitutionality of § 922(g)(1) based on various standards of review. *See United States v. Jackson*, 69 F.4th 495, 505 (8th Cir. 2023) (holding that *Bruen* did not upset the Supreme Court's prior "assurances" that laws prohibiting the possession of firearms by felons are constitutional and finding "considerable support in the historical record" that the Nation has historically disarmed persons who are "deemed more dangerous than a typical law-abiding citizen."); *Vincent v. Garland*, 80 F.4th 1197, 1202 (10th Cir. 2023) (because "*Bruen* did not indisputably and pellucidly abrogate our precedential opinion …" the defendant's *Bruen* claim failed); *United States v. Racliff*, No. 22-10409, 2023 WL 5972049, at *1 (5th Cir. Sept. 14, 2023) (reviewing appellant's challenge to § 922(g)(1) for plain error and concluding that his claim failed under that standard "[b]ecause there is no binding precedent explicitly holding that § 922(g)(1) is unconstitutional and because it is not clear that *Bruen* dictates such a result") (petition for writ of certiorari docketed Dec. 15, 2023); *United States v. Miles*, 86 F.4th 734, (7th Cir. 2023) (applying plain error review and finding that "the district court could not plainly err in upholding § 922(g)(1)'s constitutionality" where there was no binding circuit precedent after *Bruen*)). The Third Circuit, sitting *en banc*, held that § 922(g)(1) was unconstitutional, but that was only as applied to an individual with a single decades-old misdemeanor conviction for making a false statement to obtain food stamps. *Range v. Atty. Gen. United States of Am.*, 69 F.4th 96, 103 (3d Cir. 2023).

The Government is aware of at least four courts in this district that have addressed the constitutionality of § 922(g)(1) in the wake of *Bruen*. And all four have upheld the statute. *See Cusick v. U.S. Dep't of Just.*, No. CV TDC-22-1611, 2023 WL 5353170, at *5 (D. Md. Aug. 18, 2023) (finding that "*Bruen* did not expand the Second Amendment right beyond the right of law-abiding citizens to possess a firearm for self-defense" and the court was bound by Fourth Circuit precedent); *United States v. Antjoun Riddick*, No. CR TDC-22-057 (D. Md. Jan. 9, 2023) (oral ruling rejecting facial challenge to § 922(g)(1) charge); *Alexander v. United States*, No. CR RDB-19-020, 2023 WL 6845424, at *7 (D. Md. Oct. 17, 2023) (finding that *Bruen* did not "call[] into question the constitutionality" of § 922(g)(1)); *Collins v. Garland*, No. CV ADC-23-042, 2023 WL 6962723, at *5 (D. Md. Oct. 20, 2023).

Finally, an overwhelming number of district courts across the country have rejected challenges to the constitutionality of § 922(g)(1) following *Bruen*. *See e.g. United States v.*

**B.     Even if Fourth Circuit Precedent Did Not Control in the Wake of *Bruen*, the Defendant's Indictment is Still Constitutionally Valid.**

**1.     The plain text and historical context of the Second Amendment indicate that felons as a category, and the Defendant specifically, can be disarmed.**

*Bruen* requires that courts first look to "the Second Amendment's plain text," as informed by "this Nation's historical tradition of firearm regulation." *Bruen*, 142 S. Ct. at 2126. Two independent aspects of the Amendment's text demonstrate that it does not prevent legislatures from disarming felons. And *Heller* and *Bruen*'s authoritative interpretation of the text confirm that view.

First, felons do not fall within "the people" protected by the Second Amendment, a term that *Heller* said refers to "members of the political community." *Heller*, 554 U.S. at 580. Historically, legislatures could exclude felons from the political community. As Thomas Cooley explained in his 1868 Treatise on Constitutional Limitations, which *Heller* described as "massively popular," *id*. at 616, "the people in whom is vested the sovereignty of the State . . . cannot include the whole population," and "[c]ertain classes have been almost universally excluded"—including "the idiot, the lunatic, and the felon, on obvious grounds," Thomas M. Cooley, <u>A Treatise on the Constitutional Limitations Which Rest Upon the Legislative Power of the States of the American Union</u> 28-29 (1st ed. 1868). Indeed, today it remains the case that "[t]he commission of a felony often results in the lifelong forfeiture of a number of rights" tied to membership in the political community, including "the right to serve on a jury and the fundamental right to vote." *Medina v. Whitaker*, 913 F.3d 152, 160 (D.C. Cir. 2019).

---

*Coleman*, No. 3:22CR87 (DJN), 2023 WL 6690935, at *19 (E.D. Va. Oct. 12, 2023) (listing "170 district court opinions that have rejected a post-*Bruen* challenge to the constitutionality of § 922(g)(1)" as of October 12, 2023).

Contrary to the Defendant's argument, the term "people" need not bear precisely the same meaning in the Second Amendment that it does in the First and Fourth Amendments. The latter provisions undisputedly protect even those who have been excluded from "the political community" because of felony convictions. *Heller*, 554 U.S. at 580. But *Heller* indicates that even those who are protected by other provisions of the Bill of Rights—including "felons and the mentally ill," *id*. at 626—nevertheless can be disarmed consistent with the Second Amendment.

Second, regardless of whether felons fall within "the people," the "right . . . to keep and bear arms" has never been understood to prevent the disarming of felons. *Heller* explained that "the Second Amendment was not intended to lay down a 'novel principl[e]' but rather codified a right 'inherited from our English ancestors.'" *Heller*, 554 U.S. at 599 (quoting *Robertson v. Baldwin*, 165 U.S. 275, 281 (1897)). The 1689 English Bill of Rights, which "has long been understood to be the predecessor to our Second Amendment," *id*. at 593, provided that "the Subjects which are Protestants, may have Arms for their Defence suitable to their Conditions, and as allowed by Law," *id*. (*quoting* 1 W. & M., ch. 2, § 7, in 3 Eng. Stat. at Large 441). The wording of that provision indicates that "the legislature—Parliament—had the power and discretion to determine who was sufficiently loyal and law-abiding to exercise the right to bear arms." *Range*, 53 F.4th at 275. Thus, when the "Second Amendment . . . codified [the] pre-existing right" to bear arms, *Heller*, 554 U.S. at 592, it codified a right that was "not unlimited," *id*. at 626, and was not understood to extend to lawbreakers.

The Constitution's ratification debates support this understanding of the Amendment's text. In what *Heller* called a "highly influential" proposal, 554 U.S. at 604, a group of Pennsylvania antifederalists advocated for an amendment guaranteeing the right to bear arms "unless for crimes committed, or real danger of public injury." *United States v. Skoien*, 614 F.3d

638, 640 (7th Cir. 2010) (en banc) (quoting 2 Bernard Schwartz, The Bill of Rights: A Documentary History 662, 665 (1971)). This "Second Amendment precursor[ ]," *Heller*, 554 U.S. at 604, indicates that the Amendment allowed the legislature to disarm those who had committed serious "crimes" such as felonies. Thus, the Amendment's text, understood in its historical context, does not prevent Congress from disarming felons.

The Supreme Court's authoritative interpretation of the Second Amendment's text confirms this view. *Heller* explained that, "[l]ike most rights, the right secured by the Second Amendment is not unlimited" and is "not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose." *Heller*, 554 U.S. at 626. *Heller* indicated that "prohibitions on carrying concealed weapons" were lawful. *Id*. It said the Amendment applies only to "the sorts of weapons" that were "in common use at the time." *Id*. at 627 (quotations omitted). And the Court said that "nothing in [its] opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms." *Id*. at 626-27. Thus, in conducting its "textual analysis" of the Second Amendment, *id*. at 578, *Heller* saw no inconsistency between the Amendment's text and laws prohibiting "possession of firearms by felons," *id*. at 626.

Moreover, *Heller* defined the right to bear arms as belonging to "law-abiding, responsible" citizens, *Heller*, 554 U.S. at 635, a category which clearly excludes felons. *See Hamilton*, 848 F.3d at 626. *Bruen* echoed that definition, stating more than ten times that the Second Amendment protects the rights of "law-abiding" citizens. *Bruen*, 142 S. Ct. at 2122, 2125, 2131, 2133, 2134, 2138, 2150, 2156. And six justices took pains to emphasize that *Bruen* did nothing to upset *Heller*'s

and *McDonald*'s reassurances that certain firearms regulations, such as prohibitions on the possession of firearms by felons, are constitutional. *See id*. at 2157 (Alito, J., concurring) ("Nor have we disturbed anything that we said in *Heller* or *McDonald* . . . , about restrictions that may be imposed on the possession or carrying of guns."); *id*. at 2162 (Kavanaugh, J., joined by Roberts, C.J., concurring) ("Properly interpreted, the Second Amendment allows a 'variety' of gun regulations," including the "'longstanding prohibitions on the possession of firearms by felons'" discussed in *Heller* and *McDonald* (quoting *Heller*, 554 U.S. at 626, 636)); *id*. at 2189 (Breyer, J., joined by Sotomayor and Kagan, JJ., dissenting) ("I understand the Court's opinion today to cast no doubt on that aspect of *Heller*'s holding" permitting felons to be prohibited from possessing firearms).

Additionally, when "reiterat[ing]" the standard applicable to Second Amendment claims, *Bruen*, 142 S. Ct. at 2129, *Bruen* endorsed the constitutionality of "shall-issue" firearm-carry licensing regimes, many of which deny licenses to felons either directly or through incorporating federal law. *See*, *e.g.*, Ga. Code Ann. § 16-11-129(b)(2)(B); La. Stat. Ann. § 40:1379.3(C)(6); 18 Pa. Cons. Stat. § 6109(e)(1)(viii); Tex. Gov't Code Ann. § 411.172(a)(3); W. Va. Code Ann. § 61-7-4(b)(5); *Range*, 53 F.4th at 272 (citing statutes). *Bruen* explained that "nothing in our analysis should be interpreted to suggest the unconstitutionality of the 43 States' 'shall-issue' licensing regimes." *Bruen*, 142 S. Ct. at 2138 n.9. The Court said that those regimes, "which often require applicants to undergo a background check or pass a firearms safety course, are designed to ensure only that those bearing arms in the jurisdiction are, in fact, 'law-abiding, responsible citizens.'" *Id*. And Justice Kavanaugh, joined by the Chief Justice, explicitly said that such "shall-issue licensing regimes are constitutionally permissible." *Id*. at 2162 (Kavanaugh, J., concurring).

*Bruen*'s endorsement of those licensing schemes would make little sense if the Second Amendment in fact prevented legislatures from disarming felons.

Simply stated, the Second Amendment's text—and the Supreme Court's decisions interpreting that text—demonstrate that the Amendment does not prohibit the disarming of felons. *Heller*, *McDonald*, and *Bruen* all distinguish non-law-abiding citizens from law-abiding ones. The Defendant's claim, therefore, fails at step one of the framework laid out in *Bruen*.

### 2. Section 922(g)(1) is consistent with the country's historical tradition of firearm regulation.

Even if the Supreme Court had not already defined the Second Amendment in a way that excludes the right of convicted felons to possess firearms, the Defendant's challenge still fails because § 922(g)(1) fits comfortably within the nation's longstanding tradition of disarming unvirtuous or dangerous citizens. As the Fourth Circuit has recognized, "[p]laced in the wrong hands, firearms present a grave threat to public safety, and for this reason, the Anglo-American right to bear arms has always recognized and accommodated limitations for persons perceived to be dangerous." *United States v. Carter*, 669 F.3d 411, 415 (4th Cir. 2012) (abrogated on other grounds by *Bruen*). Indeed, "historical evidence support[s] the notion that government could disarm individuals who are not law-abiding members of the political community," such as convicted felons. *See United States v. Carpio-Leon*, 701 F.3d 974, 980 (4th Cir. 2012).

The Defendant argues that *Bruen* established two different historical tests to determine whether a firearm regulation fits within the county's historical tradition—one requiring "distinctly similar" regulations for longstanding societal problems that could have been addressed by the founders and one requiring a tradition of only "relatively similar" regulations for problems that were unprecedented at the founding. However, that framework conflicts with the Fourth Circuit's approach in *Maryland Shall Issue, Inc. v. Moore*, 86 F.4th 1038, 1046 (4th Cir. 2023), *reh'g en*

14

*banc granted*, No. 21-2017 (L), 2024 WL 124290 (4th Cir. Jan. 11, 2024), which applied the "relevantly similar" standard without first inquiring whether the societal problems addressed were longstanding. The court noted that "*Bruen* is clear that a historical analogue only justifies a modern law if the two are *relevantly similar*," meaning the "modern and historical regulations impose a comparable burden on the right" and "that burden is comparably justified." *Id*. at 1046-47 (quotation marks omitted, emphasis added). In other words, *Bruen* did not articulate different historical tests. This Court also commented that *Bruen* did not "neatly" set out two historical tests based on whether the problem is unprecedented or longstanding. *United States v. Jackson*, 661 F. Supp. 3d 392, 408 (D. Md. 2023). This Court should apply the same logic here, follow the Fourth Circuit's approach, and apply the only historical test established by *Bruen*—whether the regulation is "relatively similar" to historical analogues.

      Section 922(g)(1) is "relatively similar" to numerous historical analogues. For centuries, the gun rights of certain groups have been categorically limited to promote public safety. As noted above, *Heller* identified the right protected by the 1689 English Bill of Rights as "the predecessor of our Second Amendment." 554 U.S. at 593. That document provided "[t]hat the Subjects which are Protestants, may have Arms for their Defence suitable to their Conditions, and as allowed by Law." *Id*. (citing 1 W. & M., ch. 2, § 7, in 3 Eng. Stat. at Large 441). Both before and after its adoption, the English government retained the power to disarm individuals it viewed as dangerous. *See Carpio-Leon*, 701 F.3d at 980. Moreover, as described above, Thomas M. Cooley's 1868 treatise, later explained that some classes of people were "almost universally excluded" from exercising certain civic rights, including "the idiot, the lunatic, and the felon, on obvious grounds." Thomas M. Cooley, <u>A Treatise on the Constitutional Limitations Which Rest Upon the Legislative Power of the States of the American Union</u> 29 (1st ed. 1868). The Second Amendment incorporates

"a common-law tradition that permits restrictions directed at citizens who are not law abiding and responsible" and "'does not preclude laws disarming the unvirtuous (i.e. criminals).'" *United States v. Bena*, 664 F.3d 1180, 1183-84 (8th Cir. 2011) (quoting Don B. Kates, Jr., The Second Amendment: A Dialogue, Law & Contemp. Probs., Winter 1986 at 146 (1986)).

Several American colonies "enacted complete bans on gun ownership by slaves and Native Americans," based on "alienage or lack of allegiance to the sovereign." *United States v. Jimenez-Shilon*, 34 F.4th 1042, 1047 (11th Cir. 2022) (quotations omitted). And during the French and Indian War, Virginia passed a law disarming Catholics unless they swore an oath of allegiance to the king. 7 Statutes at Large; Being A Collection of All the Laws of Virginia 35-36 (1820) (1756 law). These laws discriminating based on race or religion are repugnant and would be unconstitutional today for reasons having nothing to do with the Second Amendment, but they nevertheless demonstrate that colonial legislatures "had the power and discretion to use status as a basis for disarmament" even of non-violent groups. *Range*, 53 F.4th at 276 n.18.

During the Revolutionary War, Connecticut passed a law providing that any person who "shall libel or defame" any acts or resolves of the Continental Congress or the Connecticut General Assembly "made for the defence or security of the rights and privileges" of the colonies "shall be disarmed and not allowed to have or keep any arms." Public Records of the Colony of Connecticut 193 (1890) (1775 law). And, at the recommendation of the Continental Congress, see 4 Journals of the Continental Congress 205 (1906) (resolution of March 14, 1776), at least six states disarmed the "disaffected" who refused to take an oath of allegiance to those states, *see, e.g.*, 5 The Acts and Resolves, Public and Private, of the Province of the Massachusetts Bay 479 (1886) (1776 law); 7 Records of the Colony of Rhode Island and Providence Plantations, in New England 567 (1776 law); 1 The Public Acts of the General Assembly of North Carolina 231 (1804) (1777 law); 9

16

Statutes at Large; Being A Collection of All the Laws of Virginia 282 (1821) (1777 law); Rutgers, New Jersey Session Laws Online, Acts of the General Assembly of the State of New-Jersey 90 (1777 law); 9 Statutes at Large of Pennsylvania 348 (1779 law). Again, these laws demonstrate that, at the time of the founding, legislatures had the authority to disarm even non-violent people whom they deemed not to be law-abiding and trustworthy. Indeed, although the Fourth Circuit has not found it necessary to conduct an in-depth "analysis of the historical scope of the Second Amendment right" when assessing felon-in-possession statutes, it has observed that the Government "offer[ed] substantial evidence that the Founders severely limited the right to bear arms, excluding from its protection a broad range of often non-violent individuals and groups deemed 'dangerous.'" *Pruess*, 703 F.3d at 246 n.3.

The right to bear arms is analogous to civic rights that have historically been subject to forfeiture by individuals convicted of crimes, including the right to vote, *see Richardson v. Ramirez*, 418 U.S. 24, 56 (1974), and the right to serve on a jury, *see* 28 U.S.C. § 1865(b)(5); *see also Binderup v. Att'y Gen. U.S.*, 836 F.3d 336, 349 (3d Cir. 2016) (en banc) ("[P]ersons who have committed serious crimes forfeit the right to possess firearms in much the way they forfeit other civil liberties[.]") (internal quotation marks and citation omitted). Just as Congress and the States have required persons convicted of felonies to forfeit civic rights, § 922(g)(1) permissibly imposes a firearms disability "as a legitimate consequence of a felony conviction." *Tyler v. Hillsdale Cty. Sheriff 's Dep't*, 837 F.3d 678, 708 (6th Cir. 2016) (en banc) (Sutton, J., concurring). Statutes disarming persons considered a risk to society, such as convicted felons, are well known to the American legal tradition. Section 922(g)(1) is consistent with that longstanding tradition.

3. **Section 922(g)(1) is constitutional as applied to the Defendant based on his prior convictions for felonies.**

Section 922(g)(1) is constitutional to individuals like the Defendant who have previously committed dangerous and violent felonies. *See supra*, n.2 (listing the Defendant's prior disqualifying convictions). Courts across the country have denied as-applied challenges to dangerous and violent felons, such as the Defendant. "[W]hether a government can forbid violent felons from possessing a firearm has not been meaningfully questioned by courts to date." *United States v. Gonzalez*, No. 22-1242, 2022 WL 4376074, at *2 (7th Cir. Sept. 22, 2022) (unpublished). In *Maryland Shall Issue*, the Fourth Circuit noted that judges which "canvassed the historical record" "tend to agree that history and tradition support an exception affording legislatures 'the power to prohibit dangerous people from possessing guns.'" 86 F.4th 1038, 1046, *reh'g en banc granted*, No. 21-2017 (L) (4th Cir. Jan. 11, 2024) (quoting *Kanter v. Barr*, 919 F.3d 437, 451 (7th Cir. 2019)). And in *U.S. v. Moore*, a case that predates <u>Bruen</u> but, as discussed above, has not been abrogated, the Fourth Circuit denied an as-applied challenge to a § 922(g)(1) indictment, and held that the defendant, who had three prior convictions for robbery and two prior convictions for assault with a deadly weapon on a government official, "undoubtedly flunks the 'law-abiding responsible citizen' requirement." 666 F.3d at 320.

The only federal circuit court to find § 922(g)(1) unconstitutional involved an as-applied challenge to a petitioner who was barred from possessing a firearm based solely on a decades old conviction for making a false statement to obtain food stamps. *Range v. Att'y Gen. United States of Am.*, 69 F.4th 96, 98 (3d Cir. 2023). The Third Circuit acknowledged that its opinion was "narrow" and only applied to "people like [the defendant in that case]." *Id*. at 106. As discussed above, multiple circuits and the overwhelming number of district courts have rejected as-applied challenges. Accordingly, the Defendant here, having been convicted of dangerous felonies,

including assault, burglary, and controlled substance offenses, is not similarly situated and the weight of the authority dictates that § 922(g)(1) is constitutional as applied to him.

## IV. CONCLUSION

For the foregoing reasons, the Court should deny the Defendant's Motion to Dismiss the Indictment on Second Amendment Grounds.

Respectfully submitted,

Erek L. Baron
United States Attorney

_____/S/_____
James I. Hammond
Special Assistant United States Attorney

Michael C. Hanlon
Assistant United States Attorney

36 South Charles Street, Fourth Floor
Baltimore, Maryland 21202
410-209-4800

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 26th day of February, 2024, a copy of the foregoing Government's Response to Defendant's Motion to Dismiss the Indictment on Second Amendment Grounds was served via the ECF filing system to counsel of record.

_____/S/_____
James I. Hammond
Special Assistant United States Attorney