**IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **UNITED STATES** | : | |
| | : | |
| | : | |
| **v.** | : | **Case No. RDB-23-0126** |
| | : | |
| **AL TARIQ SMITH** | : | |
| | : | |
| **Defendant** | : | |

## MR. SMITH'S MOTION IN LIMINE TO ADMIT PORTIONS OF LAW ENFORCEMENT BODY-WORN CAMERA FOOTAGE

Al Tariq Smith moves in limine to admit portions of the officers' body-worn camera footage at his upcoming trial. Specifically, Mr. Smith seeks to allow the jury to watch certain portions of the body-worn camera footage with police officers during and immediately after his arrest. As explained below, those portions of the body-worn camera footage do not contain prohibited hearsay, either because the conversations they contain do not qualify as hearsay or fall under one or more exceptions to the ban on hearsay evidence. The key question in this case is whether the government can prove that Mr. Smith knowingly possessed the ammunition with which he is charged in this case; the limited portions of the body-worn camera footage Mr. Smith seeks to admit are crucial to establishing Mr. Smith's defense that he did not possess the ammunition and that officers failed to fully investigate to determine who possessed the ammunition, even after Mr. Smith put them on notice that they should. The Court should therefore permit admission of the requested portions of the body-worn camera footage.[1]

---

[1] Mr. Smith reserves the right to seek admission of additional out-of-court communications that the government, at trial, may challenge as hearsay. Nothing in any statute or the Federal Rules of Criminal Procedure requires a party to file motions in limine in advance of trial. This motion focuses on portions of the body-worn camera footage the defense anticipates the government objecting to.

1

## Background

As the Court well knows, this case is about Mr. Smith's arrest on the morning of January 17, 2023. After a Baltimore City 911 caller reported that a car had been parked at a gas station pump at the Clark gas station since 2:00 a.m. with someone inside, three officers responded to the scene: Officers Dollard, Gibbs, and Austin. Officer Dollard parked next to the Jeep. Officer Austin parked next to the sidewalk. And Officer Gibbs parked near an adjacent convenience store.

Officer Dollard approached the driver's side of the Jeep and observed Mr. Smith unresponsive. Officer Gibbs approached the front passenger side window. Officer Dollard knocked on the window repeatedly in an attempt to awaken Mr. Smith. After Officer Gibbs observed a gun in the center console, Officer Gibbs drew his firearm. The officers ordered Mr. Smith to wake up and demanded he unlock the car doors. Mr. Smith, in turn, immediately complied. The officers quickly opened the doors, pulled Mr. Smith out of the car, and handcuffed him. At the motions hearing, Officer Dollard testified that Mr. Smith was immediately arrested. *See* Trans. 55:7-25; 56:1-3. In quick succession, Mr. Smith was questioned, patted down, and searched, in the presence of three officers and then eventually more. His initial interaction with officers lasted approximately 10 minutes.

## Argument

Under Federal Rule of Evidence 802, "[h]earsay is not admissible unless" a federal statute, the Federal Rules of Evidence, or other rules prescribed by the Supreme Court "provide[] otherwise." Hearsay is defined as "a statement that" (1) "the declarant does not make while testifying at the current trial or hearing," and (2) "a party offers in evidence to prove the truth of the matter asserted in the statement." Fed. R. Evid. 801(c). In short, hearsay is an "[o]ut-of-court statement . . . offered [for] the truth of the matter asserted." *In re C.R.*

2

*Bard, Inc., MDL. No. 2187, Pelvic Repair Sys. Prod. Liab. Litig.*, 810 F.3d 913, 925-26 (4th Cir. 2016). A "statement" is "a person's oral assertion, written assertion, or nonverbal conduct, if the person intended it as an assertion." Fed. R. Evid. 801(a). Case law interpreting Rule 801, has defined what does and does not qualify as hearsay, and Federal Rules of Evidence 803, 804, and 807 include a number of exceptions to the prohibition on hearsay.

Here, Mr. Smith seeks to allow the jury to watch certain portions of the body-worn camera footage of his arrest; these portions include segments from the beginning of his interaction with officers at approximately 9:22:25 a.m. through 9:32:10 a.m. Mr. Smith moves to admit these portions of body-worn camera footage on the ground that they either (1) do not meet the definition of hearsay, or (2) fall within one or more of the exceptions to the hearsay prohibition.[2]

## I.    The Portions Of The Body-Worn Camera That Capture Mr. Smith's Arrest And Its Immediate Aftermath Are Admissible.

Mr. Smith seeks to admit Officer Dollard's body-worn camera footage from 9:22:26 a.m. to 9:25:26 a.m. and Officer Austin's body-worn camera footage from 9:22:26 a.m. to 9:26:33 a.m.

### A.    These Portions Are Admissible Because They Are Not Offered For The "Truth Of The Matter Asserted" But, Instead, To Show Mr. Smith's Demeanor And Cooperativeness.

A "statement that would otherwise be hearsay may nevertheless be admissible if it is offered to prove something *other than*" "the truth of the matter asserted." *In re C.R. Bard*, 810 F.3d at 926 (emphasis added). That is what Mr. Smith is seeking to accomplish here. The majority of this portion of the body-worn camera footage captures the officers' arrival at the

---

[2] The body-worn camera footage from Officers Dollard and Austin are being provided to the Court as Exhibits 1 and 2.

gas station, observation of the gun, and then immediate arrest of Mr. Smith and his reactions to and interactions with the officers. These portions are relevant res gestae to show the jury whether or not Mr. Smith knowingly possessed the ammunition he is charged with, and the defense anticipates that the government would introduce most, if not all, of this portion of the body-worn camera footage during its case-in-chief.

Crucial to the question of whether Mr. Smith knowingly possessed the ammunition is Mr. Smith's *demeanor* with the arresting officers as they discovered and seized the gun and ammunition and then arrested and searched him. The Court is familiar with government arguments that a defendant's evasiveness, nervousness, or flight constitutes consciousness of guilt and, therefore, is relevant to whether a defendant possessed a gun. Here, Mr. Smith demonstrated the opposite behavior when officers woke him up and arrested him. He was not looking in the direction of the gun in the center console, he unlocked the car doors, he voluntarily stepped out of the car, and then he answered the officers' questions. A reasonable jury could rely on this evidence to find that Mr. Smith did not knowingly possess the ammunition.

Mr. Smith is not seeking to admit these portions of the body-worn camera footage for the "truth of the matter asserted" but, instead, to show his demeanor and cooperativeness with the officers upon his initial arrest. *E.g.*, *United States v. de la Cruz-Paulino*, 61 F.3d 986, 996 n.8 (1st Cir. 1995) (statements on taped conversation that were "offered only for context and not for the truth of the matter asserted" were not inadmissible hearsay); *United States v. Morfin-Martinez*, 2 F. App'x 650, 652 (8th Cir. 2001) ("We observe, in addition, that statements of the cooperating individual on the tape were offered not for the truth of the matter asserted in the statements, but simply to explain the relationship between the cooperating individual and the

4

government's witness."); *Ward v. Bitter*, No. 2:12-cv-00047, 2013 WL 1178228, at *10 (E.D. Cal. Mar. 21, 2013) (noting example of a taped interview that was admitted not for the truth of the matter asserted "but for purposes of evaluating the demeanor of the speakers"); *Biomet, Inc. v. Smith*, 238 F. Supp. 2d 1036, 1045 (N.D. Ind. 2002) (deposition testimony about a third party's reaction to defendant's statements was not hearsay, and therefore admissible, because the testimony was offered to demonstrate the witness's personal observations of the third party's demeanor, not for the truth of the matter of the third party's statements nor for the third party's state of mind). Accordingly, these portions of the body-worn camera footage are admissible.

> **B.     Mr. Smith's Questions Asking Where The Gun Came From Are Not "Statements," And Even If They Are "Statements," Some Of Them Qualify As Excited Utterances.**

During these portions of the body-worn camera, Mr. Smith asks where the gun came from. For example:

- 9:24:34 a.m. – "Yo, how did a gun get in here?"

- 9:24:42 a.m. – "How did a gun get in here?"

- 9:25:12 a.m. – "How did a gun get in there…"

- 9:26:33 a.m. – "Where did that gun come from?"

Those statements are admissible because they are questions, not statements, and even if they qualify as statements, are admissible as excited utterances.

> **1.     Mr. Smith Asking Where The Gun Came From Is A Question, Not A "Statement."**

As explained above, a communication qualifies as hearsay only if it is a "statement." A "statement" is defined as "a person's oral assertion, written assertion, or nonverbal conduct, if the person intended it as an assertion." Fed. R. Evid. 801(a). "'Assertion' is not defined, but

the advisory committee notes to Rule 801(a) clarify that 'nothing is an assertion unless intended to be one.'" *United States v. Sinclair*, 301 F. App'x 251, 253 (4th Cir. 2008). Accordingly, "[a] question or inquiry is not a statement, and therefore is not hearsay unless it can be construed as an intended assertion." *Id.* (quoting published opinions from Second, Fifth, Seventh, and Tenth Circuits). The "focus [of] the inquiry [is] on the declarant's intent." *United States v. Summers*, 414 F.3d 1287, 1300 (10th Cir. 2005). Where a declarant intends "'to state or declare [something] positively'" or "'to demonstrate the existence of'" a fact, his communication is an assertion. *Id.* at 1299 (quoting dictionary definitions of "assert"). On the other hand, where a communication "requests . . . information," it "cannot be construed as [an] assertion[]." *Sinclair*, 301 F. App'x at 253. To the extent the declarant's intent is "ambiguous," courts should resolve close cases "in favor [of] admissibility." *Summers*, 414 F.3d at 1300.

Here, context makes clear Mr. Smith was asking questions and did not intend his questions to be assertions. He did not mean to "state or declare" anything. *Id.* at 1299. Rather, just having woken up, clearly in a drunken state, and startled, he was "request[ing] information" about where the gun came from. *Sinclair*, 301 F. App'x at 253. Mr. Smith's questions are therefore not "assertions" within the meaning of Rule 801(a). *See Summers*, 414 F.3d at 1300 (explaining that when a question is "designed to elicit information and a response," it is not an assertion); *United States v. Pulliam*, 973 F.3d 775, 783 (7th Cir. 2020) (same). His intent in asking where the gun came from is not "ambiguous," but even if it were, the Court still should resolve this case "in favor [of] admissibility." *Summers*, 414 F.3d at 1300.

**2.     Even If They Qualify As "Statements," Mr. Smith's Questions Are Excited Utterances.**

Federal Rule of Evidence 803(1) excepts from the rule against hearsay "excited utterances." An excited utterance is a "statement relating to a startling event or condition, made while the declarant was under the stress of excitement that it caused." Fed. R. Evid. 803(2). "To qualify under the excited utterance exception, (1) the declarant must have experienced a startling event or condition; (2) she must have related the statement while under the stress or excitement of that event or condition, not from reflection; and (3) the statement or utterance must have related to the startling event or condition." *United States v. Jennings*, 496 F.3d 344, 349 (4th Cir. 2007). The "justification[s]" for admitting excited utterances are (1) "the assumption that an excited declarant will not have had time to reflect on events to fabricate," and (2) the belief that "errors in memory will have had less time to accumulate." *Id.*

The Fourth Circuit has "rejected . . . a mechanical approach to the excited utterance exception." *Id.* at 350. Rather than applying bright-line rules, courts should make a holistic assessment of "whether the declarant's statement was trustworthy by being made in circumstances where it would not be reasonable to conclude that the declarant fabricated the statement or incorrectly remembered the events related." *Id.* In particular, "[t]he lapse of time between the event and the declaration is just one of several factors to consider in the analysis." *Id.* "The fact that the time lapse between the occurrence of the exciting event and the excited utterance is not precisely known does not preclude admission of the utterance pursuant to the Rule 803(2) exception if there is evidence that the declarant appeared excited when the statement was made and there was a reasonable basis for this continuing excitement." *United States v. Widener*, 956 F.2d 1163, 1992 WL 42949, at *2 (4th Cir. Mar. 9, 1992) (unpublished).

Because excited utterances are made in direct response to an event that is "startling" in nature, they must be made while the speaker is still "under the stress of the excitement caused by the event," "before there is time to contrive or misrepresent." *United States v. Arnold*, 486 F.3d 177, 184-185 (6th Cir. 2007) (quoting *Haggins v. Warden, Fort Pillow State Farm*, 715 F.2d 1050, 1057 (6th Cir. 1983)). Whether or not an event was "startling" such that utterances made in response qualify as "excited utterances" can be established by "non-hearsay evidence corroborating the anxiety-inducing nature of th[e] event," such as "excitement exhibited by the tenor and tone of . . . voice" and "distraught demeanor personally observed by [o]fficers . . . upon their arrival at the scene" of a 911 call. *Id.* at 185.

Here, being aroused by multiple armed officers in marked cars, immediately being commanded to exit the car, being pulled out of the car, placed in handcuffs, arrested, and questioned – particularly after being woken up from a drunken stupor – qualifies as a "startling event." Fed. R. Evid. 803(2). The questions were clearly relayed while under the stress or excitement of that event. Mr. Smith was pulled out of the car at 9:24:00 a.m. Handcuffs were placed on him by 9:24:15 a.m. Officers were searching him while he asked, "Yo, how did a gun get in here" at 9:24:34 a.m. and then again at 9:24:42 a.m. and then again at 9:25:12 a.m. *E.g.*, *United States v. McCullough*, 150 F. App'x 507, 510 (6th Cir. 2005) (applying exception where statements were made "not . . . longer than two-and-a-half hours" after witnessing companion's arrest); *United States v. Green*, 125 F. App'x 659, 662 (6th Cir. 2005) (applying exception to statements made three hours after startling event); *United States v. Alexander*, 331 F.3d 116, 123 (D.C. Cir. 2003) (applying exception to statements made 15 to 20 minutes after the startling event); *United States v. Baggett*, 251 F.3d 1087, 1090 & n.1 (6th Cir. 2001) (applying the excited utterance exception to statements made several hours after the last of

8

multiple beatings over a three day period); *United States v. Cruz*, 156 F.3d 22, 30 (1st Cir. 1998) (applying exception to statements made four hours after startling event); *United States v. Tocco*, 135 F.3d 116, 128 (2d Cir. 1998) (applying exception to statements made within three hours of startling event). And finally, the questions related to the startling event, *i.e.*, the discovery and seizure of the gun from the car. Accordingly, the questions are admissible as excited utterances.

## II. The Portion Of The Body-Worn Camera From 9:28:33 To :37 a.m. Is Admissible As An Excited Utterance Or Present Sense Impression.

Mr. Smith seeks to admit Officer Dollard's and Officer Austin's body-worn camera footage from 9:28:33 to :37 a.m. In that clip, Mr. Smith says, "I don't know where the hell . . . that gun came from. That ain't mine." The statement is admissible as an "excited utterance" under Federal Rule of Evidence 803(2) or as a "present sense impression" under Federal rule of Evidence 803(1).

### A. The Statement Is Admissible Under Rule 803(2) As An Excited Utterance.

"To qualify under the excited utterance exception, (1) the declarant must have experienced a startling event or condition; (2) she must have related the statement while under the stress or excitement of that event or condition, not from reflection; and (3) the statement or utterance must have related to the startling event or condition." *Jennings*, 496 F.3d at 349. The statement meets each of these requirements.

*First*, just shortly before this statement, Mr. Smith was woken up by multiple armed officers in marked cars, immediately commanded to exit the car, pulled out of the car, placed in handcuffs, arrested, and questioned. That certainly was a "startling event." Fed. R. Evid. 803(2).

*Second*, his statement was relayed while under the stress of that event. Though four minutes had passed since being pulled out of the car, the fact that Mr. Smith was still under the stress of being arrested is well supported by the case law. *E.g.*, *Baggett*, 251 F.3d at 1090 & n.1 (passage of several hours); *McCullough*, 150 F. App'x at 510 (passage of "not . . . longer than two-and-a-half hours"); *Green*, 125 F. App'x at 662 (passage of three hours); *Alexander*, 331 F.3d at 123 (passage of 15 to 20 minutes); *Cruz*, 156 F.3d at 30 (passage of four hours); *Tocco*, 135 F.3d at 128 (passage of about three hours). "An excited utterance need not be contemporaneous with the startling event to be admissible under Rule 803(2)." *Tocco*, 135 F.3d at 127, and here it was contemporaneous.

*Third*, the statement related to the startling event, *i.e.*, the discovery and seizure of the gun from the car.

Accordingly, the statement is admissible as an excited utterance.

**B.     The Statement Is Admissible Under Rule 803(1) As A Present Sense Impression.**

Alternatively, the entire statement is admissible as a "present sense impression" under Federal Rule of Evidence 803(1). A present sense impression is defined as a "statement describing or explaining an event or condition, made while or immediately after the declarant perceived it." Fed. R. Evid. 803(1). The "underlying rationale of the present sense impression exception is that substantial contemporaneity of event and statement minimizes unreliability due to defective recollection or conscious fabrication." *United States v. Lovato*, 950 F.3d 1337, 1344 (10th Cir. 2020). Because "a small delay . . . is not enough to allow reflection, which would raise doubts about trustworthiness," courts "refuse[] to adopt a *per se* rule indicating what time interval is too long under Rule 803(1)," but instead hold that "the admissibility of

statements under hearsay exceptions depends upon the facts of the particular case." *Id.* (ellipsis in original).

In this case, Mr. Smith's statement "describe[es]" or "explain[s]" the event of the officers finding and seizing a gun from the car he was asleep in, passing the first requirement of Rule 803(1). In addition, his statement was contemporaneous. It was made *while* he was in the process of being arrested for the gun, passing the second requirement of Rule 803(1). There was no delay to allow reflection or thought, which would raise doubts about its trustworthiness. Accordingly, the statement is admissible as a present sense impression.

### III.    The Portion Of The Body-Worn Camera From 9:30:08 to :23 Is Admissible.

Mr. Smith seeks to admit Officer Dollard's and Officer Austin's body-worn camera footage from 9:30:08 to :23. In that clip, Mr. Smith says, "I don't even know where that fucking gun came from. I just brought someone here for a fucking hack, man. Check that fucking gun, my hands ain't on that."

### A.    The Entire Statement Is Admissible Because It Is Not Hearsay, As It Is Being Introduced For Its Effect On The Listener (The Police Officers).

Mr. Smith's entire statement – "I don't even know where that fucking gun came from. I just brought someone here for a fucking hack, man. Check that fucking gun, my hands ain't on that." – is admissible because it is being offered for *its effect on the listener—i.e.*, the police officers. It is not being offered for the truth of the matter asserted.

The Fourth Circuit's opinion in *United States v. Gallagher*, 90 F.4th 182, 195 (4th Cir. 2024), is instructive:

> Not everything a person says or writes is hearsay. Hearsay is an out-of-court statement offered "*to prove the truth of the matter asserted in the statement.*" Fed. R. Evid. 801(c)(2) (emphasis added). If a statement is offered for any other reason, it is not hearsay and may not be excluded on that basis. See Fed. R. Evid. 802 (providing hearsay is generally not admissible but establishing no broad rule against

11

out-of-court statements). A classic example are statements offered for their effect on the listener. *See United States v. Simmons*, 11 F.4th 239, 263–64 (4th Cir. 2021). Such statements are not hearsay because their relevance does not depend on whether the declarant spoke the truth. Instead, they are admissible because they are offered to "establish the state of mind thereby induced" in the recipient or "to show the information which [the recipient] had as bearing on the reasonableness [or] good faith ... of subsequent conduct." 2 McCormick on Evid. § 249 (8th ed.) (McCormick).

In that case, the government's trial theory was that two individuals, Kalugin and Gallagher, had been married, but that by Spring 2016 their marriage was over and that everything after was part of a conspiracy to obtain immigration benefits. *Id.* at 195. To rebut that claim, Kalugin and Gallagher sought to introduce Facebook messages the two sent to each other that were "seemingly loving." *Id.* The Fourth Circuit ruled that the district court erred in excluding those messages given that they were not offered to prove the truth of the matter asserted but, instead, for their effect on the listener. *Id.*at 195-96. The Fourth Circuit noted: "Whether Gallagher truly loved Kalugin when she wrote him saying she did, the messages were relevant to show *what Kalugin could have believed about the state of the marriage based on what she was hearing from Gallagher*. And the affectionate messages Kalugin sent Gallagher are similarly relevant to show *the effect they would have had on her*." *Id.*

Just as in *Gallagher*, here, the entire statement is not being offered for its truth: that Mr. Smith did not know where the gun came from, that Mr. Smith was acting as a hack, or that his fingerprints and DNA were not on the gun. Here, the entire statement is being offered for its *effect on the listener*, that is, the officers who did not check for surveillance or fingerprints or DNA on the gun. In other words, admission of the statement is being used to show that the officers were on notice that they should check the fingerprints and gun and that they should gather surveillance from the gas station, but that they did not do any of these things.

Indeed, a short while later in his interaction with officers, Mr. Smith again raised his concerns about the lack of investigation. He told yet another officer (Sergeant Bieber), "I ain't have no gun on me, man. Take down my fucking DNA, fingerprints, whatever y'all gonna do on that gun." In response, the officer said, "Okay, we're gonna check into that, but for now you're under arrest."[3] This interaction between Mr. Smith and Sergeant Bieber makes this point: Mr. Smith wasn't making these types of commands to fingerprint the gun, swab the gun for DNA, or pull surveillance footage for the truth of the matter asserted but, instead, for the *effect on the listener—i.e.*, to go do these things. The fact that they understood the statements as commands to take further investigative steps but did not is the key point, and the one that is highly relevant to Mr. Smith's defense. Mr. Smith's defense is that he did not possess the gun and that the officers did not do a fulsome investigation to determine who actually possessed the gun, even though they fully should have been aware of the need to do a fulsome investigation.

Admission of the entire statement is *crucial* to allowing the jury to assess the officers' subsequent conduct and investigation, *including whether they failed to conduct further investigative steps to address the issues raised by Mr. Smith's comments*. After all, the jury will be tasked to determine whether the government has proven this case beyond a reasonable doubt. To do that, the jury will consider the evidence *and lack of evidence*.

---

[3] Mr. Smith intends to elicit this interaction from that officer, Sergeant Bieber.

**B.** **Alternatively, Each Individual Sentence Is Admissible For Separate Reasons.**

**1.** **The First Two Sentences Are Excited Utterances Or Present Sense Impressions.**

The first two sentences – "I don't even know where that fucking gun came from. I just brought someone here for a fucking hack, man." – qualify as excited utterances or present sense impressions. As to the excited utterance exception, Mr. Smith had experienced a startling event or condition; he made the statement while under the great stress of being awoken by multiple police officers armed with guns and immediately arrested and questioned, not from reflection; and the statement certainly relates to the startling event. *Jennings*, 496 F.3d at 349. As to the present sense impression exception, the sentences "describ[e] or explain[]" the event – the officers' arrest of him after discovering a gun in a car where he was asleep – and they were made "while or immediately after" the event. Fed. R. Evid. 803(1).

**2.** **The Final Sentence Is A Command, Not A Statement.**

The final sentence – "Check that fucking gun, my hands ain't on that." – is a command, not a "statement." As such, it does not qualify as hearsay and is admissible.

Like questions, "imperative commands," such as "close the door," are not "statements" that are barred by the rule against hearsay. *First Data Merchant Services Corp. v. SecurityMetrics, Inc.*, No. RDB-12-2568, 2014 WL 7409537, at *15 (D. Md. Dec. 30, 2014); *Lorraine v. Markel American Ins. Co.*, 241 F.R.D. 534, 566 (D. Md. 2007) (citing Jack B. Weinstein & Margaret A. Berger, Weinstein's Federal Evidence § 801.11[2] (Joseph M. McLaughlin ed., Matthew Bender 2d ed. 1997)); *Planmatics, Inc. v. Showers*, 137 F. Supp. 2d 616, 621 (D. Md. 2001) ("[O]ut-of-court declarations to a witness offered for the purposes of proving the fact of the instruction or command are not hearsay as defined by Fed.R.Evid. 801(c)." (citing cases from the Fifth Circuit, Second Circuit, and Third Circuit)). This is

14

because commands are not offered for the truth of the matter asserted. *Michigan First Credit Union v. Cumis Ins. Soc., Inc.*, 641 F.3d 240, 251 (6th Cir. 2011) ("This statement is not hearsay because it is a command, a verbal act without truth value."); *e.g.*, *United States v. Rich*, No. 21-0432-BAH, 2024 WL 2396706, at *5 (D. Md. May 23, 2024) (admitting, as one basis, commands from doctors telling a defendant to misrepresent his disability because they were commands that "likely . . . do not even have any underlying truth value").

Just like "close the door," "check that fucking gun, my hands ain't on that" is a command. It is an instruction or demand, a "verbal act without truth value." It is not being admitted for any truth of the matter asserted.

## IV.    The Portion Of The Body-Worn Camera From 9:32:10 To :27 Is Admissible.

Mr. Smith seeks to admit Officer Dollard's and Officer Austin's body-worn camera footage from 9:32:10 to :27. In that clip, Mr. Smith says, "I wake up, there's a fucking gun in the car. Like, where the fucking gun come from? . . . . Check that shit for my shit. And um, like, I dropped someone here for a fucking hack."

### A.    The Entire Statement Is Admissible Because It Is Not Hearsay, As It Is Being Introduced For Its Effect On The Listener (The Police Officers).

Mr. Smith's entire statement – "I wake up, there's a fucking gun in the car. Like, where the fucking gun come from? . . . . Check that shit for my shit. And um, like, I dropped someone here for a fucking hack." – is admissible because it is being offered for its effect on the listener. As before, the entire statement is not being offered for its truth: that Mr. Smith did not know where the gun came from, that Mr. Smith was acting as a hack, or that his fingerprints and DNA are not on the gun. Here, the entire statement is being offered for its effect on the listener, that is, the officers who did not gather surveillance or fingerprints or DNA on the gun. In other words, admission of the statement is being used to show that the officers were on notice that

15

they should check the fingerprints and gun, that they should check gather surveillance from the gas station, that they had a reason to check the fingerprints and gun because of Mr. Smith's comments, and that they did not do any of these things. Admission of the entire statement is critical to allow the jury to assess the officers' subsequent conduct and investigation, which goes directly to the question of whether the government can prove beyond a reasonable doubt that Mr. Smith knowingly possessed this ammunition. *E.g.*, *Gallagher*, 90 F.4th at 195-96 (vacating convictions after determining that district court erred in not admitting statements for their effect on the listener).

**B.  Alternatively, Each Individual Sentence Is Admissible For Separate Reasons.**

**1.  The First And Fourth Sentences Are Excited Utterances Or Present Sense Impressions.**

The first and fourth sentences – "I wake up, there's a fucking gun in the car." And "And um, like, I dropped someone here for a fucking hack." – are excited utterances or present sense impressions. As to the excited utterance exception, Mr. Smith had experienced a startling event or condition; he said the sentences while under the great stress of being awoken by multiple police officers armed with guns and immediately arrested and questioned, not from reflection; and the sentences certainly relate to the startling event. *Jennings*, 496 F.3d at 349. As to the present sense impression exception, the sentences "describ[e] or explain[]" the event – the officers' arrest of him after discovering a gun in a car where he was asleep – and they were made "while or immediately after" the event. Fed. R. Evid. 803(1).

**2.  The Second Sentence Is A Question, Not A Statement.**

The second sentence – "Like, where the fucking gun come from?" – is a question, not a statement. Mr. Smith did not mean to "state or declare" anything. *Summers*, 414 F.3d at 1300.

16

Instead, just having woken up, clearly in a drunken state, and startled, he was "request[ing] information" about where the gun came from. *Sinclair*, 301 F. App'x at 253. Mr. Smith's questions are therefore not "assertions" within the meaning of Rule 801(a). *See Summers*, 414 F.3d at 1300 (explaining that when a question is "designed to elicit information and a response," it is not an assertion); *Pulliam*, 973 F.3d at 783 (same). His intent in asking where the gun came from is not "ambiguous," but even if they were, the Court still should resolve this case "in favor [of] admissibility." *Summers*, 414 F.3d at 1300.

### 3.    The Third Sentence Is A Command.

The third sentence – "Check that shit for my shit." – is a command, not a statement. These types of commands are not "statements" that are barred by the rule against hearsay. *First Data Merchant Services Corp.*, 2014 WL 7409537, at *15; *Lorraine*, 241 F.R.D. at 566; *Planmatics*, 137 F. Supp. 2d at 621. The reason for this is that they are not offered for the truth of the matter asserted: that Mr. Smith's DNA and fingerprints are not on the gun. *E.g.*, *Rich*, 2024 WL 2396706, at *5. It is being offered simply to show that Mr. Smith demanded that action be taken.

### <u>Conclusion</u>

The portions of the body-worn camera footage described in this motion either do not constitute hearsay or qualify for one or more exceptions to the ban on hearsay. The Court should admit them at trial.

Respectfully submitted,

James Wyda
Federal Public Defender
        for the District of Maryland

_____/s/_____
Maggie Grace (#29905)
Francisco A. Carriedo (#816158)

17

Assistant Federal Public Defenders
100 S. Charles Street
Tower II, Suite 900
Baltimore, MD 21201
Phone: 410-962-3962
Email: maggie_grace@fd.org
francisco_carriedo@fd.org

## **REQUEST FOR HEARING**

Pursuant to Rule 105.6 of the Local Rules of the United States District Court for the District of Maryland, a hearing is requested on Mr. Smith's motion.

_____/s/_____
Maggie Grace
Francisco A. Carriedo
Assistant Federal Public Defenders