**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | |
| **v.** | **CRIMINAL NO. RDB-23-126** |
| **AL TARIQ SMITH** | |
| **Defendant** | |

**GOVERNMENT'S OMNIBUS RESPONSE IN OPPOSITION TO
DEFENDANT'S MOTIONS *IN LIMINE***

Erek L. Barron
United States Attorney

James I. Hammond
Assistant United States Attorney

Michael C. Hanlon
Assistant United States Attorney

36 South Charles Street
Fourth Floor
Baltimore, Maryland 21201
410-209-4800

## **TABLE OF CONTENTS**

BACKGROUND..………..………………………………………….…………………3

ARGUMENT …………………………………………………….…………….4

I.      The Court Should Deny Defendant's Motion To Preclude Impeachment By Prior Convictions Because Defendant's Prior Convictions Are Admissible Under Fed. R. Evid. 609 Should He Choose to Testify (ECF No. 68).......................................4

II.     The Court Should Deny the Defendant's Motion to Play the Washington Unconscious Bias Video (ECF No. 69)……………………………………………………………9

III.    This Court Should Deny Defendant's Motion To Admit Portions of Law Enforcement Body-Worn Camera Footage (ECF No. 70)…………………………………………...13

      A.      The Defendant's Attempt To Introduce Self-Serving Statements At Trial Without Testifying Is Barred By Rule 801(d)………………………………...15

      B.      The Defendant's Out-Of-Court Statements He Proposes To Admit At Trial Are Statements Offered For The Truth Of The Matter Asserted And Are Barred by Rule 802…………………………………………………………………....17

      C.      There Are No Exceptions Under Rule 803 That Permit The Introduction Of The Proposed Statements By The Defendant………….……………………...19

            1.  They Are Not Present Sense Impressions…………………………..19
            2.  They Are Not Excited Utterances………………………………….20
            3.  They Are Not Being Introduced For Their Effect On The Listener.…….21
            4.  They Are Not Commands…………………………………………..23

      D.      Should The Court Allow Any Of The Defendant's Proposed Statements Into Evidence At Trial, The Government May Admit The Defendant's Prior Felony Controlled Substance Convictions For Impeachment Purposes…………….....24

CONCLUSION………………………………………………………………… 26

Now comes the United States of America, by and through its counsel, requesting Al Tariq Smith's ("Defendant") motions *in limine* be denied. The Defendant is currently charged with possession of ammunition by a prohibited person, in violation of 18 U.S.C. § 922(g)(1). ECF No. 1. Trial in this matter is scheduled to begin August 26, 2024. On July 15, 2024, the Defendant filed motions *in limine* to preclude impeachment by prior convictions (ECF No. 68); requesting the Court to play the Western District of Washington's "Unconscious Bias" video for the jury (ECF No. 69); to admit portions of law enforcement body-worn camera footage (ECF No. 70); and a fourth request filed under seal (ECF Nos. 71 and 72).[1]  All of the motions should be denied.

## **BACKGROUND**

On the morning of January 17, 2023, Baltimore Police Department officers responded to the Clark gas station at 1101 West North Avenue in Baltimore City to investigate a person who had been passed out behind the wheel of a Jeep at a gas pump since around 2:00 a.m. Upon arrival, police activated their body-worn cameras and found the Defendant asleep behind the wheel. The doors were locked. The Defendant was the sole occupant of the Jeep. Police attempted to awaken the Defendant. While doing so, they observed a firearm in plain view on the center console next to the Defendant. Police were able to awaken the Defendant, have him unlock the doors, assist him out of the vehicle, and secure the firearm. The firearm was loaded with fifteen rounds of ammunition. Police found the Defendant was prohibited from possessing a firearm and ammunition due to prior criminal convictions. The events were captured on police body-worn cameras.

---

1     The Government responds in this filing to ECF Nos. 68, 69, and 70, and will file a separate response under seal to the Defendant's sealed motion *in limine* at ECF Nos. 71 and 72.

**ARGUMENT**

I.    **The Court Should Deny Defendant's Motion To Preclude Impeachment By Prior Convictions Because Defendant's Prior Convictions Are Admissible Under Fed. R. Evid. 609 Should He Choose to Testify (ECF No. 68).**

This is not the Defendant's first encounter with the criminal justice system. He has the following prior convictions: 1) a 2007 conviction for second-degree assault; 2) a 2009 conviction for second-degree assault; 3) a 2009 conviction for violating a protective order; 4) a 2010 conviction for possession of a controlled dangerous substance; 5) a 2011 conviction for possession of a controlled dangerous substance; 6) a 2012 conviction for fourth-degree burglary; 7) a 2012 conviction for riding a dirtbike in Baltimore City limits; 8) a 2012 conviction for fleeing and eluding law enforcement; 9) a 2015 conviction for possession of a controlled dangerous substance; 10) a 2017 conviction for possession with intent to distribute a controlled dangerous substance; 11) a 2018 conviction for possession with intent to distribute a controlled dangerous substance; and 12) a 2019 conviction for possession of a controlled dangerous substance.

The Defendant moves to preclude the Government from attempting to use his prior convictions as impeachment material pursuant to Fed. R. Evid. 609 should he elect to testify at trial. Under Fed. R. Evid. 609, the Defendant's prior convictions for possession with intent to distribute a controlled dangerous substance are admissible as impeachment material should the Defendant elect to testify at trial. As detailed below, these prior crimes are recent, do not involve similar conduct as the charged offense, and thus are more probative of veracity than prejudicial to the Defendant. As such, the motion should be denied.

The Government expects to introduce at trial evidence of the January 17, 2023, incident through the testimony of various officers, through the physical evidence recovered, and through

4

various videos taken of the incident and the surrounding events. In his defense, the Government expects that the Defendant may seek to disclaim any knowledge of the firearm and ammunition, thereby making his knowledge with regard to the possession of the firearm and ammunition a critical issue in this case. Specifically, the Defendant may attempt to claim that the firearm and ammunition were someone else's and that he had no prior knowledge that they were in the vehicle.

Should the Defendant choose to testify in his defense, particularly on the element that he knowingly possessed ammunition, the Government would admit relevant and highly probative evidence of the Defendant's previous convictions for possession with intent to distribute controlled dangerous substances to impeach the credibility of the Defendant and to give the jury context to the Defendant's testimony. Specifically, on July 31, 2017, and on January 31, 2018, the Defendant was convicted of felony controlled substance offenses. Cross-examination about these prior convictions paints a more fulsome picture for the jury in their decision-making about the Defendant's credibility.

Under Rule 609, if the defendant in a criminal case testifies, then prior felony convictions "must be admitted . . . if the probative value of the evidence outweighs its prejudicial effect to that defendant." Fed. R. Evid. 609(a)(1)(B). The court must conduct a balancing test in which it considers several factors.

First, the court must determine whether the prior conviction is probative. The Fourth Circuit has held that "as a general rule, convictions of felony are admissible as going to the credibility of a witness." *United States v. Truslow*, 530 F.2d 257, 265 (4th Cir. 1975); *United States v. Miller*, 478 F.2d 768, 769 (4th Cir. 1973) (stating that "'[p]rior criminal convictions for felonies or misdemeanors involving moral turpitude ordinarily constitute material impeaching evidence.'")

(citation omitted). Furthermore, several courts have held that "[p]rior drug-trafficking crimes are generally viewed as having some bearing on veracity." *United States v. Brito*, 427 F.3d 53, 64 (1st Cir. 2005) (citing *United States v. Gant*, 396 F.3d 906, 909-10 (7th Cir. 2005) and *United States v. Lattner*, 385 F.3d 947, 961 (6th Cir. 2004)).

Second, the court must determine whether admission of the prior conviction for impeachment would be unduly prejudicial to the defendant. *Miller*, 478 F.2d at 768. A trial court may use its discretion to limit impeachment by a prior conviction, but a limitation should occur only if there is reason to believe that "the prejudicial effect of the earlier convictions . . . will outweigh their possible probative force in impeaching credibility." *Id.* at 769 (citing *United States v. Hildreth*, 387 F.2d 328, 329 (4th Cir. 1967)).

Third, and "[p]erhaps most important[ly]," the court must determine whether the outcome will "hinge[] on a credibility choice" in which the jury must "decide whether to believe [the defendant] or the police officers." *Brito*, 427 F.3d at 64. "The salience of the credibility issue weighs in favor of admitting the prior convictions." *Id.* (citing *United States v. Pritchard*, 973 F.2d 905, 909 (11th Cir. 1992); *United States v. Oakes*, 565 F.2d 170, 173 (1st Cir. 1977); *accord Truslow*, 530 F.2d at 265 (noting how prior felony convictions are usually admissible as they go to credibility). In admitting this evidence, courts have recognized that "'[i]t would be patently unfair and misleading to the jury'" to allow the Defendant, if he chose to testify, to appear "pristine" on the witness stand when in fact he had several prior convictions which could have been used to impeach his credibility and provide the jury with a more accurate picture on the issue of credibility. *United States v. Brown*, 2009 WL 728448 at *10-11 (E.D.N.Y. Mar. 10, 2009) (quoting *United States v. Ortiz*, 553 F.2d 782, 785 (2d Cir. 1977)).

When these factors favor the Government, the Government should be permitted to elicit "the name of the crime, the time and place of conviction, and the punishment." *Miller*, 478 F.2d at 770 n.4 (citing McCormick on Evidence (1972 Ed.) § 43, p. 88).

Pursuant to these general principles, courts have permitted the introduction of prior drug felonies under Fed. R. Evid. 609 against a defendant charged with other crimes, such as in the instant case. The Defendant here is charged with illegal possession of ammunition and has two prior felony drug convictions within the last decade. Similarly, in a bank robbery prosecution, the trial court found that evidence of a defendant's felony drug conviction was admissible under Fed. R. Evid 609(a)(1) when the defendant testified since the prior conviction attacks the veracity of the defendant's testimony and the conviction is for an offense substantially different than the charged offense. *United States v. Hayes*, 553 F.2d 824 (2nd Cir. 1977).

Hayes filed a motion *in limine* to preclude his prior felony drug conviction from being used by the Government during cross-examination if he chose to testify. *Id*. at 826. Hayes lost that motion and chose not to testify, but appealed the decision after he was convicted. The *Hayes* Court held that the district court did not abuse its discretion in admitting the conviction, based on several factors, including the recency of the conviction and the type of crime, noting that "…the conviction was for a crime substantially different from the instant prosecution, so that there was not here the prejudice to appellant that inevitably results from the introduction of a conviction for the same crime as that for which he is on trial." *Id*. at 828. This is an important distinction because often prior convictions for similar conduct are brought up in the context of Fed. R. Evid 404(b), but the Fourth Circuit has also permitted the introduction of prior drug felonies under Fed. R. Evid. 609 against a defendant charged with violations of 21 U.S.C. § 841, 846. *See United States v.*

*Carmichael*, 1998 WL 390973 at *1 (4th Cir. July 14, 1998); *United States v. Leavis*, 853 F.2d 215, 220 (4th Cir.1988); *cf. United States v. Johnson*, 587 F.3d 625, 638 (4th Cir. 2009) (noting with approval how the "the government impeached [defendant on trial for drug charges] with drug possession convictions from 1996 and 2002"). That is, of course, not the case here, so the prejudicial effect to the Defendant of his prior recent felony drug convictions in a prosecution for illegal possession of ammunition is minimal.

Based on the foregoing, and pursuant to Fed. R. Evid. 609(a)(1)(B), if the Defendant chooses to testify, the Government should be entitled to ask the Defendant whether he has been convicted of prior felony controlled substance offenses; the time and place of the conviction; and the punishment he received for his convictions. The reasons for this are threefold.

First, the Defendant's prior drug convictions are felony convictions, and hence under *Truslow* and *Miller* they are probative of the Defendant's credibility. *Truslow*, 530 F.2d at 265; *Miller*, 478 F.2d at 769; *see also Brito*, 427 F.3d at 64 (noting that "[p]rior drug-trafficking crimes are generally viewed as having some bearing on veracity").

Second, the probative value of this evidence, which is established by *Truslow* and *Miller*, outweighs any prejudice. The Defendant's prior drug convictions are *not* similar to the crime for which the Defendant is charged. If they were, it may open the door for some level of prejudice, *see Carmichael*, 1998 WL 390973 *1-2 (discussing when the impeaching conviction is for a similar offense to the one being tried). However, even in those instances, any such prejudice can be cured by an appropriate limiting instruction and is not unfairly prejudicial. *See Queen*, 132 F.3d at 997. Certainly, a limiting instruction, if necessary, can satisfy any risk of prejudice in the instant case with dissimilar convictions to the charged offense.

Third, the Defendant may attempt to raise an issue about his knowledge, and hence fundamental fairness dictates that the jury be allowed to hear impeachment evidence against the Defendant lest they are misled into believing he is a "pristine" witness who has never before committed a felony. *Brown*, 2009 WL 728448 at *10-11 (citing *Ortiz*, 553 F.2d at 785). Indeed, as one court has stated, "'it is not surprising that the [district] court was unwilling to let a man with a substantial criminal history misrepresent himself to the jury, with the government forced to sit silently by, looking at a criminal record which, if made known, would give the jury a more comprehensive view of the trustworthiness of the defendant as a witness.'" *United States v. Alexander*, 48 F.3d 1477, 1489 (9th Cir. 1995) (citation omitted).

Based on the foregoing, the Defendant's prior felony drug convictions are admissible under Fed. R. Evid. 609. Therefore, Defendant's motion at ECF No. 68 should be denied.

## II.    The Court Should Deny the Defendant's Motion to Play the Washington Unconscious Bias Video (ECF No. 69).

The Defendant asks that the Court require the jury venire panel to watch a 10 minute and 53 second video from the Western District of Washington about unconscious bias.[2] The Court should deny the motion for several reasons.

First, existing procedures in this Court, such as voir dire and jury instructions, already exist to address the bias concerns raised by the Defendant. The Defendant stresses the need to eliminate juror bias in the trial of cases, see ECF No. 69 at 1-2, but voir dire exists for precisely that reason. *See United States v. Lancaster*, 96 F.3d 734, 742-44 (4th Cir. 1996) (recognizing that "[v]oir dire plays an essential role in guaranteeing a criminal defendant's Sixth Amendment right to an

---

2        https://www.wawd.uscourts.gov/jury/unconscious-bias (visited July 21, 2024).

impartial jury" and that proper voir dire is reasonably sufficient to uncover bias or impartiality in the venire)) (internal quotation marks omitted)). The voir dire process is designed to ensure that both sides are afforded the opportunity to strike prospective jurors who are incapable of serving impartially; that process serves as an adequate guardrail against juror bias. Furthermore, the Court's preliminary instructions and final jury instructions will advise the jury of the need to render the verdict based on the evidence presented during the case and the law advised by the Court and not in extrinsic, irrelevant considerations.

Those existing measures, long part of the customary practices in this District, make the proposed video unnecessary.[3]  That is partly why multiple courts have denied defense requests to play unconscious bias videos such as the one at issue here. *See, e.g., United States v. Jacobs*, 2022 WL 1624609, at *7 (S.D. Ohio May 23, 2022) (denying request to play implicit bias video because doing so "would require the Court to deviate from its standard practices" such as voir dire and preliminary jury instructions, and "[a]herence to these standard practices, which have been developed over years of trial experience, promote fairness and consistency across cases"); *United States v. Covorrubias*, 2020 WL 1170216, at *1 (D. Nev. Mar. 11, 2020) (denying defense request to play W.D. Wash. unconscious bias video prior to jury selection because Ninth Circuit model criminal jury instructions and voir dire were "more than sufficient to prevent jurors from deciding Covarrubias's guilt or innocence based in any part on his race or national origin"). As the Ninth Circuit has found, jury instructions are sufficient to guard against unconscious bias. *See, e.g., United States v. Prior*, 2024 WL 81102, at *2 (9th Cir. Jan. 8, 2024) (finding that district court

---

3       Indeed, the proposed video actually bears the risk of eclipsing or supplanting the Court's existing practices and inserting its own prejudice and bias.

"properly exercised its discretion . . . by declining to play to the jury pool a ten-minute video on unconscious bias because the instructions adequately covered the topics.").

Second, the unconscious bias video bears its own risk of injecting prejudice and confusion into this case (effectively providing evidence, before the jury is even selected, that would run afoul of Fed. R. Evid. 403). The video has no probative value and may unfairly prejudice the jury because its exposition on the perils of stereotypes and unconscious bias is entirely unmoored from the facts of this case and, accordingly, has no probative value. The larger risk is that playing the video may interfere with the other longstanding jury selection measures (as discussed above) and may actually interfere with the jury's ability to render a verdict based on the evidence and following deliberation by its members. *See United States v. Caldwell*, 81 F.4th 1160, 1176 (11th Cir. 2023) (finding no abuse of discretion in affirming district court's decision not to play unconscious bias video; agreeing with district court that by labelling so many aspects of juror experiences as "biases," the video could "cause jurors to question their ability to make judgments based upon their common sense and experience" and to "doubt their own conclusions and the conclusions of their peers, and to presume that any decision is tainted by an 'automatic' and unavoidable bias"); *United States v. Jessamy*, 464 F.Supp.3d 671, 678 (E.D. Pa. June 1, 2020) (denying motion to play unconscious bias video because doing so "through the proposed video seems more likely to cause jurors to focus heavily on a single aspect of their duty as jurors at the expense of others that are equally as important"; noting openness to considering jury instruction on implicit bias). Therefore, the potentially prejudicial impact of the video substantially outweighs the video's unproven probative value; for the same reasons that it would have prejudicial impact

if played during trial, it will have prejudicial impact if played as part of jury selection.[4]

Finally, the Defendant's proposed video presentation has not been endorsed by any court in this District or even the Fourth Circuit, as far as the Government can tell. As discussed above, it appears that most courts have denied requests to play this video or have affirmed decisions not to play the video.

One Judge of this Court, the Honorable Lydia Kay Griggsby, recently denied a defense request to play the particular unconscious bias video at issue here. *See United States v. Erbeth Gomez-Delgado*, case number 23-cr-457-LKG, Court's Order at ECF No. 63 (denying defense motion *in limine* to "play the Western District of Washington's Unconscious Bias video for the jury"). A copy of Judge Griggsby's Order is attached as Exhibit 1. The Government does not have

---

[4]      Playing the video may also convey to the jury that this Court is implicitly taking a position on the merits of the case in favor of the Defendant or that there is merit to any later arguments by the Defendant that the police officers' actions were motivated by alleged unconscious bias. Even if the Defendant does not make such an argument, the video may cause jurors to apply the video's points to the underlying facts of this case. A similar concern led to one court, in the Western District of Washington (where the video originates), to conclude that the playing of the video would be potentially harmful. *Thomas v. Cannon*, 2017 WL 11423601, at *2-3 (W.D. Wash. June 20, 2017). In that case, a wrongful death suit against police officers, the court recognized the value and intent of the video in other cases but excluded the video in that particular case because playing the video may have been construed as "a tacit endorsement" by the court of "Plaintiffs' racial-bias theory." *Id.*

The Government did find a few non-Maryland cases in which unconscious bias videos were in fact played. In those cases, it appears that the Government did not oppose the playing of the videos and the playing of the video itself was not a point of dispute. *See United States v. Donald*, 2023 WL 6958797, at *30 (D. Conn. Oct. 20, 2023) (discussing playing unconscious bias video which was apparently standard in District of Connecticut); *United States v. Walters*, 2022 WL 1498247, at *2 (D. Conn. May 12, 2022) (also District of Connecticut, noting that video was played for jury); *United States v. Ramadan*, 2021 WL 2895668, at *3 (E.D. Mich. July 9, 2021) (appears parties were in agreement on video, issue was location and timing in which video would be played); *United States v. Huerta-Zuniga*, 2021 WL 2109188, at *6 (D. Id. May 15, 2021). There are also Western District of Washington cases that discuss playing the video, which as stated, originates from that District.

a transcript of the hearing in which Judge Griggsby set forth the reasoning for her decision at this time but is ordering the transcript. Thus, as far as the Government knows, the only Judge of our Court to consider such a request has denied it.

For the foregoing reasons, the Court should deny the Defendant's motion *in limine* to have the jury panel review the Washington unconscious bias video.

## III.   This Court Should Deny Defendant's Motion To Admit Portions of Law Enforcement Body-Worn Camera Footage (ECF No. 70).

The Defendant claims that he did not possess the ammunition with which he is charged in Court One of the Indictment. ECF No. 70. To dispute that claim, rather than take the witness stand, and be subject to cross-examination, he requests that the Court allow him to introduce self-serving statements recorded on body-worn cameras of the arresting officers. The Defendant claims that these statements are not being offered for the truth of the matter asserted, or if the Court finds that they are, there are exceptions to allow their introduction. These claims are meritless and a clear attempt by the Defendant to introduce a false narrative without testifying under oath and subjecting himself to cross-examination. Accordingly, the Court should deny his motion.

In the instant case, the Defendant made several self-serving statements about the firearm, which was loaded with ammunition, that were captured on police body-worn cameras. The Defendant seeks to introduce these statements made on the date in question between 9:22:25 a.m. through 9:32:27 a.m. without testifying in his defense.[5]  These statements are as follows:

---

[5]      At the outset of the Defendant's motion, he seeks to introduce footage from 09:22:25 through 09:32:10 (ECF No 70 at p. 3), but subsection IV is dedicated to footage from 09:32:10 to 09:32:27. *Id*. at p. 15. The Government has identified what it believes are the potential statements at issue from 09:22:25 to 09:32:27, including statements in the Defendant's motion and some that were not included. The Government reserves the right to challenge additional statements should the need arise during trial.

- 09:24:33 – "Yo, how did a gun get in here?"

- 09:24:40 – "How did a gun get in here? I just dropped someone off over there."

- 09:25:10 – "How did a gun get in the car?"

- 09:25:26 – "I'm good bro. I don't know how that gun get in here. I just got a hack and we came up here."

- 09:25:37 – "The person was dropped right here. I just…"

- 09:25:58 – "Where did that gun come from?"

- 09:26:30 – "Where did that gun come from?"

- 09:27:10 – "Where the fuck did a gun come from?"

- 09:28:32 – "I don't know where the hell that gun came from. It ain't mine."

- 09:30:07 – "I don't even know where that fucking gun came from."

- 09:30:11 – "I just caught someone here for a fucking hack man."

- 09:30:19 – "Check that fucking gun, my hands ain't on that."

- 09:32:11 – "I wake up, there's a fucking gun in the car. Like where'd a fucking gun come from? Check that shit, check that shit for my shit, and, and like I dropped someone here for a fucking hack."

The Government expects to introduce at trial evidence of the Defendant's offense through police testimony, physical evidence recovered from the scene, and still shots and video clips from police body-camera footage and surveillance footage. The Government does not intend to sponsor any of the above self-serving statements of the Defendant. It is clear from the Defendant's motion that he wishes to disclaim knowledge of the firearm and ammunition, thereby ensuring that element of Count One to be a critical issue in this case. Specifically, the Defendant may attempt to claim

that the firearm and ammunition were someone else's and that he had no prior knowledge that they were in the vehicle. The Defendant can freely do so—on the witness stand, under oath, subject to cross examination. The Defendant cannot do so by introducing previously recorded self-serving statements he made that are offered for their truth in a backdoor attempt to sidestep testifying under oath in his own defense.

### A. The Defendant's Attempt To Introduce Self-Serving Statements At Trial Without Testifying Is Barred By Rule 801(d).

"Hearsay means a statement that: 1) the declarant does not make while testifying at the current trial or hearing; and 2) a party offers in evidence to prove the truth of the matter asserted in the statement." Fed. R. Evid 801(c). The "declarant means the person who made the statement" and a "statement means a person's oral assertion…." *Id*. at §§ (c) and (b). Typically, out-of-court statements of the Defendant are collected by the Government during their investigation and turned over to the Defendant in discovery to put the Defendant on notice that during trial the Government may sponsor out-of-court inculpatory statements (or not sponsor out-of-court self-serving statements) previously made by the Defendant pursuant to Fed. R. Evid. 801(d)(2). The Rule allows the Government to do so because an opposing party's statement is not hearsay. *Id*.

Contrastingly, the Defendant does not receive that benefit. Just as the Government is not permitted to introduce an out-of-court statement not given under oath by a government witness who is not subject to cross-examination under Rule 801(d)(1), the same applies to defendants seeking to introduce their own out-of-court statements, not given under oath, without being subject to cross-examination by the Government. *Id*. at § (d)(2). "The requirement of Rule 801(d)(2)(A) that an admission be offered against party is designed to exclude the introduction of self-serving statements by the party making them." *United States v. Palow*, 777 F.2d 52, 56 (1st Cir. 1985).

15

"[The Rule] simply requires that the admission at issue be contrary to party's position at trial *Id.* (internal citations omitted).

Statements of a party may be introduced for admission only when offered against that party. *United States v. Phelps*, 572 F. Supp. 262, 264 (E.D. Ky. Oct. 13, 1983) (relying on *United States v. Sanders*, 639 F.2d 268 (5th Cir. 1981), and *Auto-Owners Ins. Co. v. Jensen*, 667 F.2d 714 (8th Cir. 1981)). "Some confusion arises by reason of the fact that, to be admissible, a party's out-of-court statement need not have been against his interest when made. But it may not be offered in his *favor*, but only *against* him." *Id*. (emphasis in original). "When offered by the government, a defendant's out-of-court statements are those of a party opponent and thus not hearsay. *United States v. Sanjar*, 876 F.3d 725, 739 (5th Cir. 2017). "When offered by defense, however, such statements are hearsay (the defendant may, of course, reiterate out-of-court statements on the stand if he chooses to testify)." *Id*.

The Defendant claims that some of these statements are not hearsay because they show his "demeanor and cooperativeness." ECF No. 70 at p. 3. Not a single proposed statement has any bearing on the Defendant's demeanor or cooperativeness. In the sanitized version of police body-worn camera footage the Government intends to introduce at trial, the jury will see through the actions of the Defendant during his arrest his demeanor and level of cooperativeness at the beginning.[6] The Defendant will also question the officers under cross-examination about the Defendant's demeanor and cooperativeness during their interaction with the Defendant. The introduction of these statements has zero bearing on those topics.

---

6       As the Court may remember, the Defendant's demeanor and level of cooperativeness changes dramatically when he is told he cannot use the bathroom until he is taken to the district police station.

16

The Defendant claims that his argument is a counterargument to the Government's position of introducing evidence of a defendant's "evasiveness, nervousness, or flight" which constitutes consciousness of guilty. This argument is not persuasive. Those are all actions, commonly introduced through video footage and testimonial observations of the officers, not through self-serving statements made by a defendant. In any event, the video footage of the Defendant's arrest showing his actions is fodder for attorneys during argument as to any consciousness of guilt. His statements, however, are inadmissible hearsay.

Every single one of the thirteen proposed statements by the Defendant is a self-serving statement he is attempting to offer for the truth of the matter asserted in an attempt to deny knowledge of the firearm and ammunition. Rule 801(d) bars that admission by the Defendant because he is not an opposing party to those statements and in no way do they have any bearing on his cooperativeness or demeanor. Accordingly, the Defendant may not offer his own narrative of events at trial without testifying in his defense.

**B. The Defendant's Out-Of-Court Statements He Proposes To Admit At Trial Are Statements Offered For The Truth Of The Matter Asserted And Are Barred by Rule 802.**

The Defendant's claim that he had no knowledge of the firearm and ammunition in his vehicle is similar to that of Martin Jorge Esparza. Esparza was arrested at a weigh station after police found a large quantity of cocaine in the semi-trailer he was operating. *United States v. Esparza*, 291 F.3d 1052, 1054 (8th Cir. 2002). At trial, the district court refused to allow the jury to hear about a statement Esparza made to the arresting officer that he did not know the cocaine was in his trailer. *Id*. "The statement Esparza made at the time of his arrest – that he did not know the drugs were in his trailer – meets the general definition of hearsay; it is an out-of-court statement

17

offered to prove the truth of the matter asserted." *Id*. This is precisely what the Defendant in the instant case is attempting to do with his statements denying knowledge of the firearm and ammunition and should be denied.

The Defendant also claims that many of his assertions are questions and not statements. ECF No. 70 at p. 5. Roland Pulliam also made the exact same argument before trial. *United States v. Pulliam*, 973 F.3d 775, 779 (7th Cir. 2020). "Prior to trial, Pulliam informed the district court that he planned to elicit testimony from the officers about [his] 'what gun' remark [to officers]. The government objected to this testimony as hearsay. Pulliam responded that 'what gun' is a question, not a statement, and is therefore not hearsay. Fed. R. Evid. 801(c). The district court ruled that Pulliam's remark is inadmissible hearsay, reasoning 'that it was an assertion as opposed to a question designed to elicit a response.'" *Id*. at 783.

The Seventh Circuit has also held that sometimes questions are not statements under Rule 801 and therefore are not hearsay. *See United States v. Thomas*, 453 F.3d 838, 845 (7th Cir. 2006). However, since *Thomas*, "we have elaborated on what makes a remark a question rather than a statement. A defendant's remark is a question if it is 'designed to elicit information and a response.'" *United States v. Love*, 706 F.3d 832, 840 (7th Cir. 2013) (quoting *United States v. Summers*, 414 F.3d 1287, 1300 (10th Cir. 2005)). "If the remark is intended to assert information, it is a statement rather than a question. *See Summers*, 414 F.3d at 1300. "Put simply, the intent behind a remark dictates whether it is a statement or a question for hearsay purposes". *See id*.

In *Pulliam*, the "what gun" remark was made alongside other remarks like "I don't know what you're talking about" and "I didn't throw a gun in the bushes." *Pulliam* at 784. The Defendant combined his questions on "how did a gun get in here" with similar statements like "I don't know

how that gun get in here" and "I just got a hack and we came up here." Like the Defendant, Pulliam was not actually curious about the gun, but was instead attempting to deny knowledge and weave his narrative to police through statements and rhetorical questions. Neither defendant were genuinely questioning police or hoping to elicit a response. The Defendant here is making assertions, not asking questions designed to elicit responses. The Defendant is not asking "why am I being arrested?" The Defendant is rhetorically musing aloud about the recovered firearm next to him in an attempt to distance himself from it and deny knowledge of its presence. The repetition of the question is intended to assert information, not elicit a response from police. Their introduction at trial should therefore be denied.

### C. There Are No Exceptions Under Rule 803 That Permit The Introduction Of The Proposed Statements By The Defendant.

The Defendant cites to several exceptions in his motion as to why the proposed statements should be introduced if the Court finds them to be hearsay. To be clear, the statements are indeed hearsay, but the exceptions the Defendant argues are inapplicable.

#### 1. They Are Not Present Sense Impressions

Present sense impressions are statements "describing or explaining an event or condition, made while or immediately after the declarant perceived it." Fed. R. Evid. 801(1). To assure trustworthiness, present sense impression statements must be contemporaneous with the event or follow immediately thereafter. *United States v. Medico*, 557 F.2d 309, 315 (2nd Cir. 1977). *See also Pfeil v. Rogers*, 757 F.2d 850, 861 (7th Cir. 1985). The applicability of the exception under Rule 803(1) hinges on the absence of time for the declarant to reflect on what happened. *United States v. Narciso*, 446 F. Supp. 252, 285 (E.D. Mich. Feb. 11, 1977). The presence of such reflection by a declarant upon what happened negates an assumption of reliability of their

statement necessary under Rule 801(1). *Id.*

Police recover the firearm at approximately 09:23:55 while the Defendant is being assisted out of his vehicle and placed in handcuffs. Around forty seconds later, the Defendant began his disingenuous questioning about the gun already recovered and rendered safe by police. The most common example of present sense impressions in criminal cases are 911 callers relaying to dispatchers events that are taking place in real time or shortly thereafter. Here, the Defendant is in no way describing or explaining what is taking place, so his statements are not an impression of events at all. Moreover, he has had sufficient time to reflect on what is taking place – he is being arrested, there is a gun in the car – and how he can distance himself from it by "playing dumb." This clearly negates any indicia of reliability or trustworthiness of the Defendant's statements which is exactly why hearsay is disallowed in the first place. This exception is inapplicable as a result. Therefore, they must be barred from introduction through police body-worn cameras under this exception.

### 2. They Are Not Excited Utterances

An excited utterance is a "statement relating to a startling event or condition, made while the declarant was under the stress of excitement that it caused." Fed. R. Evid. 801(2). "Hearsay statements are admissible if they are 'uttered under stress of excitement produced by a startling event and made before the declarant has had time or opportunity to reflect or contrive.'" *Chestnut v. Ford Motor Co.*, 445 F.2d 967, 972 (4th Cir. 1971). This exception to the hearsay rule has been construed to apply only when a statement is spontaneous and not the product of reflective thought. *United States v. Knife*, 592 F.2d 472, 481 (8th Cir. 1979). "The hallmark of the exception is the requirement that there be an event so startling as to suspend the declarant's powers of reflection

and, presumably, his powers of fabrication as well." *Id*. That is simply not there case here.

Esparza also tried to make the same claim as the Defendant here. As discussed previously, Esparza made a statement about lacking knowledge that the drugs were in his semi-trailer and argued that statement was an excited utterance. The trial court and the Eighth Circuit saw through that ruse. "Esparza's statement was not admissible as an excited utterance, either. Under Rule 803(2) of the Federal Rules of Evidence, a hearsay statement may be introduced into evidence if it relates to 'a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition.' *Police discovery of contraband is not ordinarily the kind of 'startling event' to which this exception applies.*" *Esparza* 291 F.3d at 1055 (quoting *United States v. Sewell*, 90 F.3d 326, 327 (8th Cir. 1996) (emphasis added). "As we explained in Sewell, when 'incriminating evidence is discovered in one's possession, it requires only the briefest reflection to conclude that a denial and plea of ignorance is the best strategy.'" *Id*. That is precisely the play that the Defendant in the instant case made. This Court has seen the body-worn camera footage of the arrest in this case. The Defendant was not "startled" or under any "stress or excitement" of the events taking place as he claims in his motion. ECF No. 70 at p. 9. The Defendant had plenty of time to reflect and fabricate as evidenced by his repeated self-serving statements to police. His statements are not reliable or trustworthy nor were they made under any stress or excitement and are therefore not excited utterances.

### 3.  They Are Not Being Introduced For Their Effect On The Listener

The Defendant also claims that certain statements are admissible not for the truth of the matter asserted, but for their effect on the listener. This argument is also unpersuasive. Statements of the Defendant saying "check that fucking gun, my hands ain't on that" and other similar

statements are not statements in which the Defendant is actually expecting a response from the listener, nor is the state of mind of any of the officers in question about what they believed, so they cannot be introduced for any intended effect on the listener.

The Defendant relies on *Untied States v. Gallagher*, 90 F.4th 182 (4th Cir. 2024) as instructive. While the *Gallagher* Court is instructive on what constitutes statements being offered for their effect on the listener, it could not be further from persuasive factually.

"A foreign service officer [Gallagher] and a noncitizen [Kalugin] were convicted of conspiring to fraudulently obtain U.S. citizenship for [Kalugin] and making false statements in their efforts to do so." *Id*. at 187. "The government's theory at trial was that Kalugin and Gallagher's marriage was over by the spring of 2016 and that everything after that was part of a conspiracy to obtain immigration benefits." *Id*. at 195. "Seeking to rebut that claim, Kalugin and Gallagher each sought to introduce seemingly loving Facebook messages the two sent each other [a few months after the spring of 2016]…" *Id*. The Fourth Circuit found that "whether Gallagher truly loved Kalugin when she wrote him saying she did, the messages were relevant to show what Kalugin could have believed about the state of the marriage based on what he was hearing from Gallagher. And the affectionate messages Kalugin sent Gallagher are similarly relevant to show the effect they would have had on her." *Id*.

What the Defendant here conveniently leaves out is that "Kalugin's and Gallagher's *in-court testimony about the state of their marriage* did not mitigate the effects of the error." *Id*. at 197 (emphasis added). Both defendants testified in their own defense. A crucial distinction the Defendant is attempting to skirt in his own case by introducing his self-serving statements under the guise that they are not being offered for the truth, but for their effect on the listener.

As the *Gallagher* Court recognized, excluding "the sole evidence that directly corroborated [a defendant's] own testimony" about what that defendant "believed" is particularly problematic given the risk that jurors may disregard self-serving testimony by criminal defendants. *Id*. (quoting *United States v. Ibisevic*, 675 F.3d 342, 350 (4th Cir. 2012). The Defendant's belief in this case is not under question. The evidence in question in *Gallagher* was to show whether both defendants, one defendant, or neither *believed* the marriage was over given the conversations contained in the excluded messages. The *Gallagher* Court found those messages should be introduced not for whether they were true, but for the factfinder to determine if they believed the messages were true or not, and what if any effect they had on one or both codefendants about their belief as to the state of the marriage between May 2016 and February 2018.

This is a far cry from the factual universe at issue in this case. Defendants do not dictate law enforcement investigations. His claim that he is introducing this statements not for their self-serving nature, but for their effect on the listener far exceeds the scope of the exception. The Defendant will cross examine the officers about how they conducted their investigation, including processing the firearm for DNA, fingerprints, or collecting surveillance footage, or lack thereof. This drum will be beat in his opening statement and closing argument. His veiled statements to do so have no bearing on that whatsoever and are only offered for their truth in context with the rest of this statements to distance himself from the obvious. Accordingly, this Court should deny their admission on that theory.

### 4. They Are Not Commands

The Defendant makes a final attempt at admissibility based on a theory that he was commanding officers to take action in some of his statements and that therefore they are admissible

as commands, not for the truth of the matter asserted. This theory fails for the same reason his theory about the "questions" he was asking fails: they are not commands so much as they are statements. "Close the door" as the Defendant points out is a command. ECF No. 70 at p. 14. There is no assessment of truth there, so there is no underlying truth value. "Check that fucking gun, my hands ain't on that," or "check that shit for my shit" are contrastingly not commands in the same vein that are allowed. This is not an exception so much as a determination about whether the statement is hearsay at all, meaning whether it is being offered for the truth. Additionally, there is an immediacy to "close the door" where there is not in requesting forensic testing, particularly because it is questionable whether the Defendant actually wants it done or is merely saying it to further distance himself from the firearm and ammunition recovered right next to him.

Defendants routinely "command" law enforcement to show them the video, show them the laten print analysis, show them the DNA analysis. That is, until police do so, and the Defendant sees themself in the video or reads their name in the latent print and DNA reports. The "commands" typically cease after that happens. Here, the Defendant's "commands" are reiterated in the same form as every other statement he wishes to introduce: for their truth so that he can deny knowledge of the firearm and ammunition absent testifying in his own defense. They are not commands without truth value. Quite the contrary. The Court should accordingly deny that request.

### D. Should The Court Allow Any Of The Defendant's Proposed Statements Into Evidence At Trial, The Government May Admit The Defendant's Prior Felony Controlled Substance Convictions For Impeachment Purposes

"When a hearsay statement…has been admitted in evidence, the declarant's credibility may be attacked...by any evidence that would be admissible for those purposes if the declarant had testified as a witness." Fed. R. Evid. 806. The Advisory Committee Notes to the proposed rule

state that "the declarant of a hearsay statement which is admitted into evidence is in effect a witness. His credibility should in fairness be subject to impeachment and support as though he had in fact testified. *See* Rules 608 and 609."

"The court may admit evidence of the declarant's...conduct regardless of when it occurred." *Id*. Conditioning the admission of hearsay evidence on informing the jury of convictions of the individual providing the statements is not abuse of discretion because the convictions cast doubt on the credibility of statements being admitted as hearsay. *United States v. Serna*, 799 F.2d 842, 850 (2nd Cir. 1986). *See, e.g., Untied States v. Noble*, 754 F.2d 1324, 1331 (7th Cir. 1985); *United States v. Lawson*, 608 F.2d 1129, 1130 (6th Cir. 1979) (proper to impeach defendant when his counsel brought out on cross-examination of a government agent the defendant's denials of any involvement in the counterfeiting scheme); *see also United States v. Bovain*, 708 F.2d 606, 613 (11th Cir. 1983).

On the other side of the "v," where the defendants sought to admit a victim's prior conviction, the court held that it would allow such impeachment evidence pursuant to Fed. R. Evid. 806 because the victim did not testify, the victim's hearsay statement was admissible as an excited utterance, and the evidence defendants sought to admit would have been admissible if the victim would have testified. *United States v. Delvi*, 275 F.Supp. 2d 412, 417-18 (S.D.N.Y. Jun 17, 2003).

Should this Court allow any of the Defendant's hearsay statements into evidence absent his taking the witness stand, the Government is permitted to introduce his prior convictions of felony controlled substance offenses for impeachment purposes. The Court, following the admission of the evidence, can instruct the jury that the defendant's prior conviction is to be considered only for purposes of impeachment and is not to be considered as evidence of his guilt

just as it would if the Defendant took the witness stand and the Government introduced the same convictions pursuant to Fed. R. Evid. 609.

## CONCLUSION

Based on the foregoing, the Defendant's prior felony controlled substance convictions should be admitted into evidence should the Defendant chose to testify or if the Court allows the Defendant to introduce his prior statements recorded on police body-worn cameras; the Court should not stray from the practice of this District and therefore not play the "Unconscious Bias" video to potential jurors; and the Court should not permit the introduction of any of the Defendant's proposed statements because they are hearsay and not admissible by any exception. Therefore, Defendant's motions at ECF Nos. 68, 69, and 70 should be denied.

Respectfully submitted,

Erek L. Barron
United States Attorney


By:_____/S/_____
James I. Hammond
Michael C. Hanlon
Assistant United States Attorneys
36 South Charles Street, Fourth Floor
Baltimore, Maryland 21201
(410) 209-4800

**<u>CERTIFICATE OF SERVICE</u>**

I HEREBY CERTIFY that on this 22nd day of July, 2024, a copy of the foregoing

omnibus response was electronically filed with the Clerk of Court via CM/ECF and thereby

served on all counsel of record.


_____/S/_____
James I. Hammond
Assistant United States Attorney