IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND

| | |
|---|---|
| UNITED STATES | : |
| | : |
| v. | : Case No. RDB-23-0126 |
| | : |
| AL TARIQ SMITH | : |
| | : |

**MR. SMITH'S REPLY
TO GOVERNMENT'S OPPOSITION TO MOTIONS IN LIMINE**

Mr. Smith briefly replies to the government's opposition (ECF 75) to two of his motions in limine: to preclude impeachment by prior convictions (ECF 68) and to admit portions of law enforcement body-worn camera footage (ECF 70). Mr. Smith will file a separate reply regarding a police disciplinary matter. For brevity's sake and in deference to the Court, Mr. Smith plans to address the government's responses to his other motion in limine – to play the Western District of Washington's "Unconscious Bias" video for the jury (ECF 69) – at the upcoming hearing.

I. **If Mr. Smith Elects To Testify, The Government Should Not Be Permitted To Cross Examine Him With Any Of His Prior Convictions (ECF 68).**

The government's response makes clear that it seeks only to impeach Mr. Smith, should he choose to testify, with his prior 2017 and 2018 convictions for possession with intent to distribute. ECF 75 at 5. And the government seeks only to impeach Mr. Smith with these prior convictions under Federal Rule of Evidence 609(a)(1)(B). *Id.* Under Rule 609(a)(1)(B), the Court must allow impeachment with a prior conviction only "if the probative value of the evidence outweighs its prejudicial effect to that defendant." It is the government's burden of showing that the probative value outweighs its prejudicial effect. *United States v. Hayes*, 533 F.2d 824, 828 (2d Cir. 1977); *see also United States v. Cavender*, 578 F.2d 528, 530 (4th Cir. 1978). The government has failed to meet its burden, as its legal and factual analysis of Rule 609(a)(1)(B) falls short.

1

A. **The Government's Attempts To Broadly Define The Legal Confines Of Rule 609(a)(1)(B) Fall Short.**

As an initial matter, the government's efforts to broadly define Rule 609(a)(1)(B) fail in important ways. *First*, in determining the "probative value" of a prior conviction, courts do not simply assume that felony convictions automatically weigh on the credibility of a witness. *See id.* at 5. The more nuanced, relevant question is whether the prior conviction is probative as *impeachment* evidence—that is, does the conviction actually weigh on the defendant's truth telling as a witness? *E.g.*, *United States v. Peterson*, 945 F.3d 144, 158 (4th Cir. 2019) ("The court reasoned that the probative value of Bun's felony conviction as *impeachment evidence* was slight, while its potential prejudice to Bun was substantial." (emphasis added)); *United States v. Hildreth*, 387 F.2d 328, 329 (4th Cir. 1967) ("There are times, of course, when the court may impose limits on the cross-examination of a witness, especially a defendant, when there is reason to apprehend that the prejudicial effect of the earlier convictions sought to be adduced will outweigh their possible probative force in *impeaching credibility*." (emphasis added)).

*Second*, the Rule 609(a)(1)(B) analysis looks at two things: the "probative value" of the prior conviction and "its prejudicial effect." Fed. R. Evid. 609(a)(1)(B). Without citing a single Fourth Circuit case in support, the government attempt to engraft a new element into Rule 609(a)(1)(B)'s analysis: whether the case "hinge[s] on a credibility choice" between a defendant or a government witness. ECF 75 at 6 (citing *United States v. Brito*, 427 F.3d 53, 64 (1st Cir. 2005)). There is no support in the text of Rule 609(a)(1)(B) for such an additional element. Nor has the government cited a Fourth Circuit case that adds such an element to Rule 609(a)(1)(B).

Moreover – from a factual perspective – this case is a far cry from *United States v. Brito*, 427 F.3d 53 (1st Cir. 2005), the case the government relies on, and the "credibility choice" that was at issue in that case. In *Brito*, officers testified that they observed a crime *in action*: the

defendant possessing and then discarding a gun during a chase with officers. 427 F.3d at 56. In contrast, the defendant denied that such a chase had occurred and that he had possessed a gun at any time. *Id.* at 57. Accordingly, there *was* a *direct conflict* between the defendant's testimony and the officers' testimony. In this case, there is no direct conflict between what the officers will testify to (*i.e.*, what they saw when they approached and arrested Mr. Smith) and what Mr. Smith would testify to if he elected to testify (*i.e.*, what happened before the officers approached the car and arrested him). Accordingly, the First Circuit's analysis in *Brito* is inapplicable here.

*Third*, the government argues that the Court should consider whether it would be "unfair" and "misleading" to the jury for Mr. Smith to appear "pristine." ECF 75 at 6 (citing *United States v. Brown*, 2009 WL 728448, at *10-11 (E.D.N.Y. Mar. 10, 2009)).[1] Again, that is a question beyond the reach of Rule 609(a)(1)(B), which focuses on the "probative value" of a prior conviction and "its prejudicial effect." The federal rules have already defined the admissibility limits of prior convictions, leaving no room for other vague notions of "fairness."

And, further, the government misreads the case it relies on to try to add this consideration into the Rule 609(a)(1)(B) analysis. In *United States v. Brown*, the district court explained that it would be unfair for the defense to "exploit[]" a prior conviction of a *government* witness, on the

---

[1] The government cites another case – *United States v. Alexander*, 48 F.3d 1477 (9th Cir. 1995) – for the suggestion that it would be unfair to allow "a man with a substantial criminal history misrepresent himself to the jury, with the government forced to sit silently by, looking at a criminal record which, if made known would give the jury a more comprehensive view of the trustworthiness of the defendant as a witness." ECF 75 at 9. In *Alexander*, the defendant put his criminal history directly at issue by testifying that "he ran from the police because he was afraid of being arrested on outstanding warrants for traffic violations." 48 F.3d at 1489. The appellate court held that the district court did not abuse its discretion in permitting impeachment with prior convictions because that testimony "could reasonably have mislead the jury into believing that, with the exception of some minor traffic infractions, [the defendant] had no previous trouble with the police." *Id.* Mr. Smith's testimony will not put his prior history at issue, much less in any way that downplays or tries to mislead the jury, as in *Alexander*.

one hand, and then immunize the defendant from impeachment with a prior conviction, on the other hand. 2009 WL 728448, at *10 ("In other words, where the government's key witnesses will most likely be impeached by defense counsel on the basis of prior criminal convictions, the importance to Brown's defense of having him testify free from the prejudice which might be created in reference to the July 1, 1999 conviction is outweighed by the potential for misleading the jury and the interest in preserving basic concepts of fairness."). To state it plainly, Mr. Smith is *not* seeking to impeach any government witnesses with prior convictions, and the government is opposing Mr. Smith's attempts to cross-examine one officer with a prior sustained PIB finding. So *Brown*'s consideration of this factor is, like the analysis in *Brito*, inapplicable here.

### B. The Government's Analysis Of How Rule 609(a)(1)(B) Applies Here Is Incorrect.

*First*, as to the "probative value" of the 2017 and 2018 convictions, the government utterly fails to explain how prior convictions for possession with intent to distribute *actually* have probative value as to Mr. Smith's veracity. And, the government has simply ignored Mr. Smith's point that these types of convictions are simply reflective of simple financial hardship and addiction, which do not go to one's veracity. ECF 68 at 6-7. The government's entire analysis is that these "are felony convictions." ECF 75 at 8. That is not enough to raise their probative value as to impeachment to a level that permits admissibility.

*Second*, in its analysis of "its prejudicial effect to the defendant," the government nakedly asserts that the prior drug convictions "are *not* similar" to the present charge. *Id.* But the government ignores real considerations raised by Mr. Smith: these priors would suggest Mr. Smith is a recidivist criminal and is a bad person and drug dealer who is more inclined than others to illegally possess a gun and ammunition. Indeed, Fourth Circuit case law – cited by Mr. Smith in his opening motion and ignored by the government – *assumes that guns and drugs go together*, a

factor that is significantly, unfairly prejudicial to Mr. Smith should he choose to testify. *Id.* at 7 (citing *United States v. Lomax*, 293 F.3d 701, 705 (4th Cir. 2002); *United States v. Manigan*, 592 F.3d 621 629 (4th Cir. 2010)).

*Third*, the case the government heavily relies upon– *United States v. Hayes*, 553 F.2d 824 (2d Cir. 1977) – actually supports Mr. Smith's arguments that these prior convictions should be off limits as impeachment. In *Hayes*, the court cited "several factors" that led to the conclusion that the district court did not abuse its discretion in admitting a prior drug conviction. *First*, "the conviction was a very recent one." *Id.* at 828. The prior conviction occurred "two months before the trial here, and after the bank robberies charged[], and we have held that convictions have more probative value as they become more recent." Mr. Smith is charged with allegedly possessing ammunition on January 17, 2023; the prior possession with intent to distribute convictions were sustained *6 and 5 years earlier* (in 2017 and 2018). *Second*, the court considered that the prior conviction was for "smuggling," which the court expressly said "ranks relatively high on the scale of veracity-related crimes," even higher than the "sale of narcotics." *Id.* at 828 & n.8. *Third*, the court considered that the defendant had testified in the trial that resulted in the prior conviction, "and his conviction can be viewed as 'a de facto finding that the accused did not tell the truth when sworn to do so.'" *Id.* Mr. Smith's prior convictions are the result of guilty pleas, *meaning he did not testify contrary to a jury finding*.

In other words, *all* of the factors the court considered in raising the "probative value" of the prior conviction in *Hayes* are not present here. Accordingly, the probative value of Mr. Smith's prior convictions is *substantially less* than in *Hayes*. And as to the prejudicial effect, while Mr. Smith's prior convictions are of a different type than the present charge, people assume – indeed the Fourth Circuit expressly assumes – that guns and drugs go together, a factor that weighs

heavy on the scale of prejudice. So, too, does the fact that Mr. Smith's priors are 5 and 6 years old, which have the danger of suggesting to the jury that he isn't telling the truth on the witness stand simply because he is a recidivist criminal going back years.

For all these reasons, the Court should preclude the government from cross-examining Mr. Smith with any of his prior convictions

## II. The Court Should Permit Mr. Smith To Admit Portions Of Law Enforcement Body-Worn Camera Footage (ECF 70).

As noted in his opening motion, Mr. Smith seeks to play the following portions of body-worn camera footage:

- Officer Dollard's footage from 9:22:26 a.m. to 9:25:26 a.m., which includes but is not limited to certain questions;

- Officer Austin's footage from 9:22:26 a.m. to 9:26:33 a.m., which includes but is not limited to certain questions;

- Officer Dollard's and Officer Austin's footage from 9:28:33 a.m. to 9:28:37 a.m.;

- Officer Dollard's and Officer Austin's footage from 9:30:08 a.m. to 9:30:23 a.m.; and

- Officer Dollard's and Officer Austin's footage from 9:32:10 a.m. to 9:32:27 a.m.

Mr. Smith is not engaging in a "backdoor attempt to sidestep testifying under oath in his own defense." ECF 75 at 15. Mr. Smith is simply seeking to introduce portions of body-worn camera footage that contain out-of-court statements that are admissible under the rules of evidence either because they are not hearsay as defined by Rule 801(c) or fall within certain exceptions to the bar against hearsay. Accordingly, the Court should permit Mr. Smith to play the requested portions of body-worn camera footage.

### A. The Government's Lead Argument Is A Red Herring.

Mr. Smith is not attempting to admit any portions of the body-worn camera footage pursuant to Rule 801(d)(2). *See id.* at 15-16 (explaining that rule).

    **B.**    **The Government Misunderstands Mr. Smith's Request To Play Officer Dollard's Footage From 9:22:26 a.m. To 9:25:26 a.m. And Officer Austin's Footage From 9:22:26 a.m. To 9:26:33 a.m.**

The government appears to misunderstand Mr. Smith's request to play the above-referenced portions of the body-worn camera footage. *See id.* at 16-17. The entire initial interaction between Mr. Smith and the officers – in which he complies with multiple requests, including to wake up, open the doors, and get out of the car, and does not look at the direction of the center console where officers locate a gun – is certainly relevant to the question of whether Mr. Smith knowingly possessed the ammunition with which he is charged in this case. For this reason, these specific requested portions of the body-worn camera footage are admissible; they are not being offered for the truth of any statements made, but to show Mr. Smith's compliance with officers' demands, as well as his demeanor. *See* ECF 70 at Part I.A (p. 3-5).[2]

    **C.**    **Some Of The Portions Of The Body-Worn Camera Are Admissible Because They Include Questions, Not Statements.**

Mr. Smith seeks to admit certain portions of the body-worn camera that contain questions, not statements. *See* ECF 70 at Parts I.B & IV.B.2 (p. 5-6, 16-17). The government acknowledges that federal courts have held that questions do not qualify as inadmissible hearsay statements. *See* ECF 75 at 18. The cases the government relies on to support its proposition that Mr. Smith's

---

[2] The government relies on *United States v. Esparza*, 291 F.3d 1052, 1054-55 (8th Cir. 2002), for the unremarkable holding that a defendant's prior statement – that he did not know drugs were in the trailer – was inadmissible hearsay. Mr. Smith is not seeking to admit any such statement. His motion in limine focuses on questions, commands, or statements that are being admitted for their effect on the listener.

questions should not be treated like questions, and instead like statements, do not support its argument.

In *United States v. Pulliam*, 973 F.3d 775, 784 (7th Cir. 2020), the district court found that a defendant's question to law enforcement ("what gun?") was a statement – essentially, a "rhetorical question," not an actual question seeking an answer – and thus inadmissible as hearsay. The dissimilar facts in *Pulliam* make clear that Mr. Pulliam's statement was a rhetorical question (*i.e.*, an assertion), whereas Mr. Smith's questions were *genuine* questions intended to elicit a response.

For one, the evidence made clear that Mr. Pulliam *did* know "what gun" the officers were talking about: he had been holding it when they arrived, and they had seen him toss it to the ground in a futile attempt to deny possession. It is logical that, when interviewed about that gun *at a later time*, Mr. Pulliam's remarks were understood by officers as rhetorical questions meant to deny knowledge, rather than genuine questions. Unlike *Pulliam*, however, the police did not see Mr. Smith touching, holding, or even looking in the direction of the gun before or during his arrest. Instead, Mr. Smith was abruptly awoken by officers from a drunken stupor and *immediately* asked the arresting officers how the gun got in the car and then continued to repeat this question; his questions were, just that, genuine questions "meant to elicit a response," *not* rhetorical questions.

For another, Mr. Pulliam's rhetorical question of "what gun?" was part of a broader statement of denial rather than a genuine question. This was a material point for the Seventh Circuit in reaching the conclusion that it did. *Id.* at 784. Because Mr. Pulliam's "what gun" remark "was coupled with a statement of denial: 'I don't know what you're talking about, and I didn't throw a gun in the bushes,'" the district court correctly determined that, "[i]n this context, it is unlikely

8

that Pulliam was genuinely curious as to which specific gun the officers were questioning him about." *Id*.

Here, many of Mr. Smith's questions are *not* paired with any "statement of denial." *See* ECF 70 at Part I.B (p. 5-6). Mr. Smith asks at 9:24:34 a.m., "Yo, how did a gun get in here?" Mr. Smith asks again at 9:25:12 a.m., "How did a gun get in there . . . " And Mr. Smith asks yet again at 9:26:33 a.m., "Where did that gun come from?" The absence of any "statement of denial" makes clear that Mr. Smith was asking genuine questions intended to elicit a response, not rhetorical questions as in *Pulliam*.

Only one of Mr. Smith's questions is part of a larger string of sentences. That appears at the portion of the body-worn camera at 9:32:10 to 9:32:27: "I wake up, there's a fucking gun in the car. Like, where the fucking gun come from? . . . . Check that shit for my shit. And um, like, I dropped someone here for a fucking hack." *See* ECF 70 at Part IV.B.2 (p. 16-17). Mr. Smith's words are not a "statement of denial" as in *Pulliam*, but, instead, merely support for his genuine questioning of where the gun came from (*i.e.*, because he was working as a hack and did not know the source of the gun).

Nor do the other cases the government cites – *United States v. Love*, 706 F.3d 832 (7th Cir. 2013) and *United States v. Summers*, 414 F.3d 1287 (10th Cir. 2005) – further its argument. *Love* specifically states that, although some commentators have argued that commands and questions can be considered as statements for the purposes of hearsay because they can intentionally communicate information,

> [T]he federal courts do not take this approach. We held in *United States v. Thomas* that questions are not "statements" and therefore are not hearsay. 453 F.3d 838, 845 (7th Cir. 2006). Our sister circuits agree. *See, e.g., United States v. Thomas*, 451 F.3d 543, 548 (8th Cir. 2006); *Lexington Ins. Co. v. W. Pa. Hosp.*, 423 F.3d 318, 330 (3d Cir. 2005); *United States v. Wright*, 343 F.3d 849, 865 (6th Cir. 2003); *United States v. Jackson*, 88 F.3d 845, 848 (10th Cir. 1996); *United States v. Lewis*,

9

902 F.2d 1176, 1179 (5th Cir. 1990); *United States v. Oguns*, 921 F.2d 442, 449 (2d Cir. 1990).

*Id.* at 840. This "overwhelming precedent" supports the defense's argument that genuine questions are questions, not statements, and therefore the rule against hearsay does not apply to them. *Id.*

And *Summers* itself quotes "the advisory notes to Rule 801," which indicate that "the key to the definition [of a statement] is that nothing is an assertion unless intended to be one." *Id.* at 1299. Here, the circumstances make clear that Mr. Smith *intended* his questions *as questions to elicit information and a response*, not as assertions. Mr. Smith was abruptly awoken from a drunken stupor by multiple armed officers making demands of him. He quickly and immediately began asking questions about what was going on, including about how the gun got in the car. The government's attempts to cast these questions as Mr. Smith "rhetorically musing aloud about the recovered firearm next to him in an attempt to distance himself from it and deny knowledge of its presence," ECF 75 at 19, is simply the government's *argument* about how to interpret those questions, and the government is free to make that argument to the jury. The Court should reject the government's attempts to transform Mr. Smith's intent and should admit Mr. Smith's questions that are captured on the body-worn camera footage.

### D. Some Of The Portions Of The Body-Worn Camera Footage Are Admissible Because They Are Commands, Not Statements.

Mr. Smith seeks to admit some portions of the body-worn camera footage because they are commands, not statements ("Check that fucking gun, my hands ain't on that." and "Check that shit for my shit."). *See* ECF 70 at Parts III.B.2 & IV.B.3 (p. 14-15, 17). The government's arguments as to why certain commands are not commands fails for the same reasons as its argument as to why certain questions are not questions. In making demands to "check the gun," Mr. Smith is not actually asserting anything. There is no truth value to that statement, just like there is no truth value

to the command "close the door." As above, the government can *argue to the jury* its *interpretation* of Mr. Smith's demands as an attempt to "deny knowledge of the firearm and ammunition," but the government's *argument* is not a substitute for Mr. Smith's intent.

### E. Some Of The Portions Of The Body-Worn Camera Footage Are Being Offered For Their Effect On The Listener, Not For The Truth of The Matter Asserted.

Mr. Smith seeks to admit some portions of the body-worn camera footage for their effect on the listener (Officers Dollard, Gibbs, Austin, and Bieber, who listened to Mr. Smith's repeated questions and commands regarding the gun and took none of the investigate steps Mr. Smith was requesting), not for the truth of the matter asserted. *See* ECF 70 at Parts III.A & IV.A (p. 11-13, 15-16).

On this point, the government agrees that *United States v. Gallagher*, 90 F.4th 182 (4th Cir. 2024) "is instructive," but wholly misconstrues the applicability of its legal principle to this case. *Gallagher* is a recent Fourth Circuit decision that thoughtfully lays out the law regarding the admissibility of out-of-court statements introduced for their effect on the listener, not for their truth value. *See Gallagher*, 90 F.4th at 195. To briefly summarize, statements being offered for their effect on the listener are not inadmissible hearsay. *Id*. Although *Gallagher* involved charges of marriage fraud to obtain citizenship, facts which certainly share no similarities to the allegations against Mr. Smith, the legal principle underlying the Fourth Circuit opinion does not change.

The government appears to argue that the statements can be introduced for their effect on the listener ***only if*** a defendant testifies at trial. *See* ECF 75 at 22 ("Both defendants testified in their own defense. A crucial distinction the Defendant is attempting to skirt in his own case by introducing his self-serving statements under the guise that they are not being offered for the truth, but for their effect on the listener"). The government does not cite to any portion of *Gallagher* –

11

or any other federal court decision – that stands for its made-up rule that out-of-court statements offered for their effect on the listener may be introduced only if a defendant testifies at trial.

The government's next argument appears to conflate the question at issue (whether out-of-court-statements offered for their effect on the listener are not inadmissible hearsay) with the Fourth Circuit's harmless error analysis in *Gallagher*. *See id.* at 23. The government states "[a]s the *Gallagher* Court recognized, excluding 'the sole evidence that directly corroborated [a defendant's] own testimony' about what that defendant 'believe' is particularly problematic given the risk that jurors may disregard self-serving testimony by criminal defendants." *Id*. The *Gallagher* court's analysis on this point was one of three factors it considered in determining whether the district court's error was harmless. *Gallagher*, 90 F.4th at 198. It ultimately concluded that the error was not harmless and vacated the defendants' convictions on Counts 1 and 3. *Id*. The Fourth Circuit's harmless error analysis has no bearing on the underlying legal principle (and its holding) that an out-of-court statement introduced for its effect on the listener does *not* qualify as inadmissible hearsay.

Finally, the government argues that Mr. Smith's "claim that he is introducing this statements not for their self-serving nature, but for their effect on the listener far exceeds the scope of the exception." ECF 75 at 23. The Government, again, misunderstands the law regarding hearsay as thoughtfully outlined in *Gallagher*. Out-of-court statements offered for their effect on the listener are not *exceptions* to the rule against hearsay; they are simply *not* hearsay at all. *See Gallagher*, 90 F.4th at 195 ("Hearsay is an out-of-court statement offered 'to prove the truth of the matter asserted in the statement.' If a statement is offered for any other reason, it is not hearsay and may not be excluded on that basis.") (internal citations omitted).

Mr. Smith's statements are being offered for their effect on the listener – statements that would have put the officers on notice about additional investigative steps they should have taken in this case. The Government recognizes that its police officer witnesses will be cross-examined about the investigation they conducted in this case. *Id.* at 23. But it is not enough to show that the police could have done more, which defense counsel of course could do during cross-examination. ***It's important to establish that the officers had reason to do more***. Mr. Smith's repeated pleas gave them that reason. Their failure to conduct additional investigation ***in the face of an individual urging them repeatedly to do so*** and consistently providing facts as to why they should take his request seriously, is something the jury is entitled to consider in determining whether the Government has met its burden of proof in this case. *See Sand*, Modern Federal Jury Instruction No. 2-11 (instructing that the jury's verdict "must be based exclusively upon the evidence or the lack of evidence in the case"). And it is that urging to do more that defense counsel cannot effectively cross-examine on unless allowed to play these portions of the body-worn camera or simply asking the officers whether Mr. Smith urged them to take additional investigative steps.

### F. For The Reasons Explained, Portions Of The Body-Worn Camera Footage Constitute "Excited Utterances" And "Present Sense Impressions."

For the reasons explained in defense counsel's original motion in limine, Mr. Smith seeks to admit portions of the body-worn camera footage under these exceptions to the bar against hearsay. *See* ECF No. 70 at Parts I.B.2, II.A-B, III.B.1, & IV.B.1 (p. 7-11, 14, 16). The government fails to grapple with the stress, anxiety, and startling nature of being abruptly awoken from a drunken stupor by multiple armed police officers, pulled from a car, and immediately arrested and patted down in trying to argue that these statements do not qualify as excited utterances or present sense impressions. The event was not only immediately startling, but continued to be stressful and startling for some period of time, a point the government attempts to downplay. Instead, the

government's argument is, as before, based on its assumption that Mr. Smith is engaging in "disingenuous" conduct or "'playing dumb.'" ECF 75 at 20. The government can make these *arguments* to the jury, but the government's interpretation of Mr. Smith's words should not be a basis to deny his motion.

### G. The Government Appears To Misread Rule 806.

The government argues that "should the Court allow any of the defendant's proposed statements into evidence at trial, the government may admit the defendant's prior felony controlled substance convictions for impeachment purposes" under Rule 806. ECF 75 at 25-27. To be clear, Rule 806 allows for an attack on a declarant's credibility only if the out of court statements are admissible "hearsay." If the proposed statements come in because they are not hearsay – *e.g.*, because they are questions or commands, not statements, or are introduced for their effect on the listener, not for their truth – the government may *not* attack Mr. Smith's credibility with prior convictions under Rule 806.

By the plain text of the rule, Rule 806's guidelines about attacking and then supporting the credibility of a declarant apply only to *hearsay statements* that are admitted as evidence. Fed. R. Evid. 806 ("When a *hearsay statement – or a statement described I Rule 801(d)(2)(C), (D), or (E) . . . .*" (emphasis added)); *see also United States v. Pena*, 24 F.4th 46, 68 (1st Cir. 2022) ("Rule 806 only allows an attack on a non-testifying declarant's credibility if the declarant's out-of-court statement is *admitted into evidence for its truth*." (emphasis in original)); *United States v. Daugerdas*, 837 F.3d 212, 226 (2d Cir. 2016) ("Assuming that the statements that Daugerdas elicited from Morgan about Ivsan's opinion on the Short Sale Shelter constituted hearsay within the meaning of Federal Rule of Evidence 801, it was permissible to use Ivsan's guilty plea to impeach that opinion under Rules 609 and 806, subject to Rule 403's balancing test."). In *United*

14

*States v. Pena*, 24 F.4th 46, 68 (1st Cir. 2022), for example, the out-of-court statements made by a confidential informant were not admitted for their truth, but instead "for the permissible, non-hearsay purpose of providing context for the actions taken and the oral assertions made by the defendants . . . in furtherance of the defendants' alleged conspiracy to distribute cocaine base." *Id.* Because the statements were not introduced for their truth, they were not "hearsay," and therefore the co-defendants could not use Rule 806 to "create a 'hearsay' backdoor" for attacking the declarant's credibility. *Id.* at 69.

Moreover, even if the statements came in as hearsay, the prior convictions are still excludable under Federal Rule of Evidence 403. *Daugerdas*, 836 F.3d at 226. Here, as explained above, there is minimal, if any, probative value of two Mr. Smith's prior convictions for possession with intent to distribute. They are dated, and the government has not established that they are reflective of anything other than financial distress or addiction. They are not the type of conviction that is meaningfully reflective of one's veracity. Whatever minimal, if any, probative value the prior convictions have are "substantially outweighed" by unfair prejudice to Mr. Smith, given that the jury will assume Mr. Smith violated the law in the past so he must have violated the law again, and that he's a drug dealer, so he must also have possessed a gun and ammunition.

For these reasons, the Court should not permit the use of the prior convictions as impeachment even if the Court decides the statements come in as "hearsay."

## Conclusion

For these reasons and the reasons stated in Mr. Smith's opening motions, we ask the Court to grant Mr. Smith's motions in limine.

Respectfully submitted,

James Wyda
Federal Public Defender
   for the District of Maryland

_____/s/_____
Maggie Grace (#29905)
Francisco A. Carriedo (#816158)
Assistant Federal Public Defenders
100 S. Charles Street
Tower II, Suite 900
Baltimore, MD 21201
Phone: 410-962-3962
Email: maggie_grace@fd.org
francisco_carriedo@fd.org